Michael Wayne PARSON, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2002–SC–0103–MR.

Supreme Court of Kentucky.

June 17, 2004.

As Modified on Denial of Rehearing
Oct. 21, 2004.

Bruce P. Hackett, Deputy Appellate Defender of the Jefferson District, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

On May 30, 2000, a motor vehicle owned and operated by Appellant, Michael Wayne Parson, crossed the center line of a highway in Jefferson County, Kentucky, and struck a vehicle owned and operated by Lisa Eberle, injuring her and damaging

her automobile. Appellant was transported to University Hospital where a test of his blood revealed an alcohol concentration of 0.238 grams per deciliter and a test of his urine revealed the presence of an unquantified amount of cocaine and cannabinoids (marijuana).

Appellant was subsequently convicted by a Jefferson Circuit Court jury of assault in the second degree (wanton) ("assault 2nd"), a Class C felony, KRS 508.020(1)(c) and (2); operating a motor vehicle while under the influence of intoxicants (fourth offense) ("DUI 4th"), a Class D felony, KRS 189A.010(1) and (5)(d); operating a motor vehicle while license is revoked or suspended for DUI (third offense) ("OSL/DUI 3rd"), a Class D felony, KRS 189A.090(1) and (2)(c); criminal mischief in the first degree ("criminal mischief 1st"), a Class D felony, KRS 512.020; no motor vehicle liability insurance ("no insurance"), KRS 304.39–080(5), a misdemeanor, KRS 304.99–060(1)(a); and expired vehicle registration, KRS 186.170(1), a violation, KRS 186.990(1).

The jury initially sentenced Appellant to imprisonment for ten years for assault 2nd and five years each for DUI 4th, OSL/DUI 3rd, and criminal mischief 1st, and to fines of $1,000 for no insurance and $100 for expired vehicle registration. The jury recommended that the sentences for assault 2nd, DUI 4th and OSL/DUI 3rd be served consecutively and the sentence for criminal mischief 1st be served concurrently for a total of twenty years, the maximum aggregate sentence allowable under KRS 532.110(1)(c). *Young v. Commonwealth,* Ky., 968 S.W.2d 670, 675 (1998); *Hendley v. Commonwealth,* Ky., 573 S.W.2d 662, 668 (1978). However, because the jury also found Appellant to be a persistent felony offender in the first degree ("PFO 1st"), KRS 532.080(3), it recommended enhanced sentences of twenty years each for assault 2nd, DUI 4th, and OSL/DUI 3rd, and fifteen years for criminal mischief 1st. KRS 532.080(6)(b). The jury then recommended that all of the enhanced sentences be served concurrently for a total of twenty years, again the maximum aggregate sentence allowable under KRS 532.110(1)(c). Appellant appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## I. JUROR QUALIFICATION FORMS.

Section 7 of Part II of the Administrative Procedures of the Court of Justice ("Ad.Proc.") requires that each prospective juror fill out a juror qualification form devised by the Administrative Office of the Courts and submit it to the clerk within five days of the receipt of the juror summons. Part II, Section 7(7) further provides:

The contents of the juror qualification forms shall be made available to the trial judge and to parties or their attorneys of record unless the chief circuit judge or designee determines in any instance in the interest of justice that the information shall be kept confidential or its use limited in whole or in part.

The form is a questionnaire. In addition to identifying data, *i.e.,* name, address, date and place of birth, marital status, and employment, the questionnaire also contains inquiries designed to determine whether the prospective juror is legally disqualified from jury service for any of the reasons set forth in Ad. Proc., Part II, § 8. Finally, it contains questions pertaining to the juror's experience with the court system, *e.g.,* whether the juror has ever been a party to a lawsuit or been a defendant, witness, or complainant in a criminal case. The very language of Part II, Section 7(7) clarifies that a criminal defendant does not have an absolute right to inspect the completed forms.

Thrice, this Court has approved a local rule of the Jefferson Circuit Court that denies a criminal defendant access to the addresses of the jurors who serve on that defendant's case. *Thompkins v. Commonwealth,* Ky., 54 S.W.3d 147, 151 (2001); *Cornelison v. Commonwealth,* Ky., 990 S.W.2d 609, 610 (1999); *Samples v. Commonwealth,* Ky., 983 S.W.2d 151, 152–53 (1998), *overruled on other grounds by Lawson v. Commonwealth,* Ky., 53 S.W.3d 534, 544 (2001). Accordingly, instead of copying the larger original forms with the addresses blacked out, the jury pool administrators create a smaller, typewritten (thus fully legible) form containing all of the data provided by the juror except the juror's address and the juror's answers to the questions regarding legal qualifications.

Prior to voir dire, defense counsel demanded to see the original qualification forms submitted by the jurors selected for the panel in this case, suggesting that the jury pool administrators may have inaccurately transferred information from the original form to the typewritten form. Instead, the jury pool administrators furnished the forms for all of the 248 jurors who had been impaneled for that month—except one, Juror No. 24366, whose original form apparently had been lost or misplaced. Voir dire lasted approximately two hours and Appellant does not claim that defense counsel's voir dire was restricted in any fashion. After forty-eight minutes of deliberating over peremptory strikes, and after some prompting by the trial judge, defense counsel submitted his peremptory strike list, complaining that he had not had enough time to examine all 248 juror qualification forms. Examination of the peremptory strike sheets revealed that the prosecutor and defense counsel had both struck the same three jurors.

A jury of twelve, plus two alternate jurors, was sworn and seated and the remainder of the jurors were excused. Four witnesses then testified before court adjourned for the day. On the following morning, defense counsel demanded a mistrial claiming that he had now had a full opportunity to examine all 248 juror qualification forms and that he would have struck four different jurors than he actually struck had he not been forced to prematurely complete the exercise of his peremptory strikes. The jurors he claims he would have struck were Juror No. 24366, whose original form was missing; Juror No. 28117, who failed to sign his form and who, therefore, was deemed irresponsible; Juror No. 491, who worked a night shift (information not transferred to the typewritten form); and Juror No. 23788, who wrote "invasion of privacy" in the margin next to the inquiries about his marital status and occupation (though he did furnish the requested information).

It is voir dire that is the *"sine qua non* to the seating of a fair and impartial jury." *McCarthy v. Commonwealth,* Ky., 867 S.W.2d 469, 471 (1993), *overruled on other grounds by Lawson v. Commonwealth, supra,* at 544. To the extent that juror qualification forms contain information related to subjects other than a juror's legal qualifications, its purpose is to expedite the voir dire process by eliminating questions routinely asked of every juror.

Juror No. 24366, whose original form was missing, had obviously submitted a form because the data she presumably provided had been transferred from the original form to the typewritten form. Appellant could have made a record on the accuracy question by asking that she be questioned in chambers as to whether the information on the typewritten form was inaccurate or incomplete. He chose not to do so. The fact that Juror No. 28117 was

the president of a medical staff company leaves us skeptical that Appellant would have exercised a peremptory strike against him solely on grounds that he was "irresponsible." We note that Appellant did not claim entitlement to a mistrial on grounds that three additional jurors, Nos. 494, 23788, and 26060, whom he failed to peremptorily strike also, did not fully complete their original forms. Juror No. 491 did not request excusal from jury service because she worked at night. If Appellant desired to excuse night-shift workers, he could have inquired during voir dire whether any prospective jurors were so employed. He might have learned that Juror No. 491, like many persons in public employment, had been excused from work while performing jury service. When the issue was raised, the trial judge noted and no one disagreed that Juror No. 491 appeared highly attentive and exhibited no signs of being tired or sleep-deprived. With respect to Juror No. 23788, if Appellant was truly concerned whether a juror considered an inquiry into marital status and occupation an invasion of privacy, he could have so inquired during voir dire. We note in passing that defense counsel refused the prosecutor's offer to have Juror No. 23788 excused as an alternate juror.

The bottom line on this issue is that it would not have been an abuse of discretion for the trial court to have denied Appellant and his counsel access to the original forms since they contained the jurors' home addresses. That being so, the trial court could not have abused its discretion in limiting the time for defense counsel to peruse the forms for evidence that might have prompted the exercise of a peremptory strike.

## II. URINALYSIS RESULTS.

■ A screen of a urine sample taken from Appellant at University Hospital ap-proximately one hour after the accident was positive for unquantified amounts of cocaine and marijuana. Appellant made a motion *in limine* to suppress expected testimony from Dr. George Rodgers, a toxicologist, from testifying that "on the night of the accident, a test of appellant's urine revealed traces of cocaine and marijuana." In fact, prior to Dr. Rodgers's testimony, Alberta Kummer, a medical technician employed at the hospital, testified without objection that she was the person who tested Appellant's blood and urine samples and that the urine screen was positive for cocaine and marijuana. Also without objection, Kummer introduced a printout of her test results, which is found in the record as Commonwealth's Exhibit 8. It was this exhibit that was presented to Dr. Rodgers *to inform him* of the test results. Thus, there was no violation of the motion *in limine*.

Dr. Rodgers testified that traces of marijuana can remain in the body for weeks after ingestion but that traces of cocaine will disappear within twenty-four hours. He could not say when in the twenty-four hour period Appellant had ingested the cocaine but admitted that he also could not say that Appellant had not ingested the cocaine immediately prior to operating his vehicle. And, although he testified in detail to the effects of a blood alcohol concentration of 0.238 grams per deciliter on the motor skills and judgment of a person with that amount of alcohol in his system, he did not know what additional effect would result from a mixture of alcohol and cocaine. Appellant did not move to strike either Kummer's or Rodgers's testimony but only moved for an admonition to the jury to disregard all evidence of marijuana and cocaine as irrelevant. The motion was denied.

We upheld the admission of almost identical evidence in both *Estep v. Common-*

*wealth,* Ky., 957 S.W.2d 191, 193–94 (1997), and *Bush v. Commonwealth,* Ky., 839 S.W.2d 550, 555 (1992). In *State v. McClain,* 525 So.2d 420 (Fla.1988), the Supreme Court of Florida held that even a trace amount of cocaine in the system of a person charged with vehicular homicide would have some relevance, *id.* at 421; and agreed with the conclusion of a district court of appeals in *State v. Weitz,* 500 So.2d 657, 659 (Fla.Dist.Ct.App.1986), that such evidence is not inadmissible simply because a toxicologist cannot estimate the degree of impairment caused by its presence. *McClain, supra,* at 423. Nevertheless, *McClain* held that the trial court did not abuse its discretion in suppressing the evidence under Fla. Stat. Ann. § 90.403, Florida's equivalent of KRE 403. *Id.* at 422.

 Here, the trial court admitted the evidence. Like the court in *McClain,* we believe that evidence that a person charged with vehicular homicide had intoxicating drugs in his system when the homicide occurred is relevant to the issue of wantonness even without additional evidence of the degree of impairment caused by its presence. KRE 402.

> An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not.... It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.05[3], at 80 (4th ed., LEXIS 2003) (quoting Edward W. Cleary, *McCormick on Evidence* 542–43 (3d ed.1984)). The evidence was thus admissible unless its probative value was substantially outweighed by its prejudicial effect. KRE 403. This is an issue committed to the sound discretion of the trial court. *Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999). We conclude that the trial court did not abuse its discretion in admitting the evidence.

## III. CHAIN OF CUSTODY.

 Christine Kerr testified that she collected the samples of Appellant's blood and urine in the emergency room at University Hospital on the night in question, that she handed the samples to a medical technician who labeled the samples with Appellant's name and handed them to another medical technician for delivery to the hospital laboratory, located down the hall from the emergency room. Kummer testified that the samples were delivered to her, that they were labeled with Appellant's name, and that she tested the blood sample for the presence of alcohol and the urine sample for the presence of various drugs, including cocaine and marijuana. Appellant claims that the Commonwealth failed to prove the chain of custody because it did not produce the testimony of either the person who labeled the samples or the person who delivered them to the laboratory. We disagree.

> [I]t is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that the reasonable probability is that the evidence has not been altered in any material respect.

*Rabovsky v. Commonwealth,* Ky., 973 S.W.2d 6, 8 (1998) (quotation omitted). *See also Love v. Commonwealth,* Ky., 55 S.W.3d 816, 821 (2001). The evidence offered by Kerr and Kummer proved a reasonable probability that the blood and urine samples delivered to and tested by

Kummer were the samples collected from Appellant, and that the samples had not been altered in any material respect during the short transit from the emergency room to the laboratory.

## IV. WITNESS DEPOSITION.

Three medical doctors, Drs. Peter Latino, David Zhou, and George Rodgers, and a licensed physical therapist, Timothy Nichol, testified for the Commonwealth. The first scheduled trial date was August 16, 2001. On the morning of trial, Appellant requested and was granted a continuance after the trial court granted the Commonwealth's motion to amend the indictment. On the morning of the second scheduled trial date, November 6, 2001, Appellant again requested and was granted a continuance, this time because defense counsel's investigator, who might be called as a witness, was ill (the investigator did not testify when the trial was finally held), and because defense counsel might possibly have a medical problem as well. The prosecutor objected on grounds that this was the second time the medical witnesses had been subpoenaed and their medical practices disrupted. The trial court inquired whether the parties could agree to present any or all of the medical testimony by deposition and defense counsel (in the presence of Appellant) readily agreed. In response to a statement by the trial judge that if a plea agreement could not be negotiated, they would discuss deposing the doctors and setting the case for trial at a future date, Appellant, himself, responded, "That would be fine, your honor." A new trial date was scheduled for January 2, 2002.

On November 21, 2001, the Commonwealth took the videotaped deposition of Timothy Nichol, the licensed physical therapist. The deposition was taken in the courtroom before a special judge who presided due to the illness of the regular

judge. Appellant and his counsel were present and counsel was afforded and exercised the right of cross-examination. In addition to testifying to the nature and extent of the victim's injuries and his treatment thereof, Nichol stated under oath that he had made arrangements to be in Minnesota during the Christmas holidays from December 22 through January 2, and in Nevada for a company meeting from January 3 through January 7. At the conclusion of the deposition, defense counsel served Nichol with a subpoena to appear in person at trial on January 2, 2002. At a hearing on December 20, 2001, the regular trial judge quashed the subpoena and Nichol's testimony was presented to the jury in the form of the videotaped deposition.

The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to confront his accusers at trial. *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause."); *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right."). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. 36, ——, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). KRE 804(a)(5) provides that a witness is unavailable for purposes of admission of former testimony, KRE 804(b)(1), if the witness "[i]s absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means." When

the right of confrontation is implicated, there is an additional requirement that the proponent of the witness have made a good faith effort to obtain the witness's presence at trial. *Barber, supra,* at 725, 88 S.Ct. at 1322. Contrary to the prosecutor's assertion at the December 20, 2001, hearing, the mere absence of the witness from the jurisdiction does not constitute "unavailability," and RCr 7.10(1) cannot be so interpreted. *Brumley v. Wingard,* 269 F.3d 629, 640 (6th Cir.2001) (construing Ohio Crim. R. 15(F), a rule almost identical to RCr 7.10). Obviously, Nichol was not "unavailable" in the constitutional sense.[1]

■ However, even "the most basic rights of criminal defendants are subject to waiver." *New York v. Hill,* 528 U.S. 110, 114, 120 S.Ct. 659, 663, 145 L.Ed.2d 560 (2000) (internal quote omitted). *E g.,* right to a speedy trial, *Barker v. Wingo,* 407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), *Dunaway v. Commonwealth,* Ky., 60 S.W.3d 563, 571 (2001); right to a public trial, *Levine v. United States,* 362 U.S. 610, 619, 80 S.Ct. 1038, 1044, 4 L.Ed.2d 989 (1960); right to a trial by jury, *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942), *Short v. Commonwealth,* Ky., 519 S.W.2d 828, 832–33 (1975), *superseded by rule as stated in Jackson v. Commonwealth,* Ky., 113 S.W.3d 128, 131–32 (2003); right to counsel, *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), *Wake v. Barker,* Ky., 514 S.W.2d 692, 695–96 (1974); right to testify on one's own behalf, *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987), *Crawley v. Commonwealth,* Ky., 107 S.W.3d 197, 199 (2003); right to be present at all stages of trial, *United States*

*v. Gagnon,* 470 U.S. 522, 528, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985), *Fugate v. Commonwealth,* Ky., 62 S.W.3d 15, 19 (2001); right to appeal, *Johnson v. Commonwealth,* Ky., 120 S.W.3d 704, 706 (2003).

■ Likewise, a criminal defendant may waive the constitutional right of confrontation. *Illinois v. Allen,* 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970); *Richmond v. Commonwealth,* Ky., 637 S.W.2d 642, 646 (1982); *Bonar v. Commonwealth,* 180 Ky. 338, 202 S.W. 676, 679 (1918). Appellant clearly waived his right to confront Nichol at trial when defense counsel, with Appellant's acquiescence, agreed that the testimony of medical witnesses could be presented by deposition. *Richmond, supra,* at 644 (waiver by counsel: "[The defendant] could have been [present] if his attorney had so chosen."). Federal courts have uniformly held that counsel can waive a criminal defendant's Sixth Amendment right of Confrontation "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *United States v. Reveles,* 190 F.3d 678, 683 n. 6 (5th Cir.1999) (quoting *United States v. Stephens,* 609 F.2d 230, 232–33 (5th Cir.1980)). *See also United States v. Cooper,* 243 F.3d 411, 418 (7th Cir.2001) (same); *United States v. Plitman,* 194 F.3d 59, 64 (2d Cir.1999) ("[W]e reject [the] argument that a defendant in every instance personally must waive the right to confront the witnesses against him."); *Hawkins v. Hannigan,* 185 F.3d 1146, 1155 (10th Cir.1999) (upholding evidentiary stipulation against Sixth Amendment challenge because "there is no evidence that

1. Appellant did not object to Nichol's deposition on the ground that he was not a "doctor" but only on the ground that he was not "unavailable."

[defendant] disagreed with or objected to his counsel's decision"); *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir.1965) ("[T]he accused may waive his right to cross examination and confrontation and... the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy."); *Cruzado v. Puerto Rico*, 210 F.2d 789, 791 (1st Cir. 1954) ("[W]here an accused is represented by counsel, we do not see why counsel, in his presence and on his behalf, may not make an effective waiver of [the right of confrontation].").[2] Here, defense counsel agreed to the deposition either in exchange for a continuance or, as noted *infra*, for the purpose of obtaining pretrial discovery to which he otherwise was not entitled. Appellant was present and did not dissent from the waiver. The only remaining issue is whether Appellant could renege on his waiver after Nichol's deposition was completed.

Application of the contractual principle of estoppel has been applied to agreements between prosecutor and defendant in a criminal case.

It seems obvious that if the state makes a promise to an accused and the accused takes no action in reliance on the promise, the state may withdraw the offer. No agreement has been reached. There is nothing to enforce. The prosecutor's right to withdraw is equal to his right to withhold an offer.

. . .

However, if the offer is made by the prosecution and accepted by the accused, either by entering a plea *or by taking action to his detriment in reliance* on the offer, then the agreement becomes binding and enforceable.

*Commonwealth v. Reyes*, Ky., 764 S.W.2d 62, 64–65 (1989) (emphasis added) (quotation omitted).

When, however, the defendant detrimentally relies on the government's promise, the resulting harm from this induced reliance implicates due process guarantees. This basic estoppel principle was recognized by the Court in Santobello [*Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)]; when a defendant pleads guilty in reliance on an agreement with the prosecutor, that promise must be fulfilled. Santobello arguably could be extended to cover the situation where the defendant has not yet entered the plea, but has relied on the bargain in such a way that a fair trial would no longer be possible.

*Gov't Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3rd Cir.1980).

These cases, of course, involved situations where the government sought to welsh on its agreement after a criminal defendant had acted in detrimental reliance thereon, thus implicating due process considerations. Nevertheless, we have held that a criminal defendant may not obtain a tactical advantage by claiming lack of confrontation after his attorney initially attended a witness's court-ordered deposition but voluntarily departed prior to its conclusion. *Carter v. Commonwealth*, Ky., 782 S.W.2d 597, 599–600

---

**2.** Contrary to the assertion in the dissent, *post*, *Carter v. Sowders*, 5 F.3d 975 (6th Cir. 1993), does not hold otherwise. The defect in *Carter* was the absence of any evidence that the defendant knew that the Commonwealth intended to take the witness's deposition, thus precluding the argument that his failure to attend the deposition somehow constituted an implied consent. *Id.* at 980–82. As for the dissent's reliance on *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989), *overruled on other grounds by Caudill v. Commonwealth*, Ky., 120 S.W.3d 635 (2003), we noted in *Fugate v. Commonwealth, supra*, at 19, that *Dean* did not purport to overrule *Richmond v. Commonwealth, supra*, and, being only a plurality opinion on this point, had no precedential value.

(1989), *overruled on other grounds by Norton v. Commonwealth,* Ky., 37 S.W.3d 750, 753 (2001), *habeas granted on other grounds by Carter v. Sowders, supra,* note 2 (defendant did not personally attend deposition and evidence did not prove he had actual notice thereof, thus he could not be deemed to have waived confrontation). *See also Estep,* 957 S.W.2d at 193 (defendant could not complain on appeal of use of videotaped deposition where she agreed prior to trial that expert's deposition could be used as evidence). *Cf. People v. Couch,* 48 Cal.App.4th 1053, 56 Cal.Rptr.2d 220, 221–22 (1996) (defendant estopped from challenging on appeal sentence to which he had agreed in plea bargain); *State v. Crosby,* 338 So.2d 584, 593 (La.1976) (defendants' agreement to concede venue in exchange for prosecutor's agreement not to exhibit admissible and relevant, but gruesome, photographs necessary to prove venue, precluded defendants from claiming on appeal that trial court forced them to stipulate venue).

There is no provision in our criminal rules that would have allowed Appellant to take a discovery deposition of a witness for the Commonwealth. *Rigsby v. Commonwealth,* Ky., 495 S.W.2d 795, 798 (1973), *overruled on other grounds by Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549, 552 (1985). Here, Appellant would accomplish what he otherwise could not have accomplished were he permitted to agree to a deposition, RCr 7.10(3), then welsh on the agreement after the deposition was concluded and thereby obtain discovery of the nature of the witness's testimony. Obviously, the decision to make the belated objection was premeditated because defense counsel came to the deposition armed with the subpoena that he withheld until learning what the testimony would be. We will not speculate as to whether Appellant's purpose was to obtain discovery by subterfuge, to deprive the Com-

monwealth of Nichol's testimony at trial, or to obtain yet another continuance. Regardless, the Commonwealth acted in detrimental reliance on the agreement by (1) agreeing to a trial date on which a key witness could not be present, and (2) making a key witness available for a deposition that otherwise could not have been obtained. We conclude that principles of estoppel and fundamental fairness preclude Appellant from claiming a denial of his right of confrontation under these circumstances.

■ Furthermore, because the deposition was videotaped in the courtroom with the witness in the witness box, the jury was able to "weigh the demeanor of the witness" in a courtroom setting. *Barber v. Page, supra,* at 725, 88 S.Ct. at 1322. Nor was Appellant denied the right of cross-examination or the right to "meet the witness[ ] face to face." Ky. Const. § 11. A judge presided over the testimony just as would have occurred at trial. Thus, we conclude that even if there had been error, it would have been harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (even constitutional errors are subject to harmless error analysis). Of course, even if an error had occurred, it would only affect the conviction and sentence for assault 2nd since Nichol's testimony addressed only the serious physical injury element of that offense.

## V. SERIOUS PHYSICAL INJURY.

■ One of the elements that distinguishes the Class C felony of assault 2nd (wanton), KRS 508.020(1)(c), from the Class A misdemeanor of assault in the fourth degree (wanton) ("assault 4th"), KRS 508.030(1)(a), is whether the injury sustained by the victim was a "physical injury" or a "serious physical injury."

Those terms are defined as follows in KRS 500.080:

(13) "Physical injury" means *substantial physical pain* or any impairment of physical condition;

. . .

(15) "Serious physical injury" means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, *prolonged impairment of health,* or prolonged loss or impairment of the function of any bodily organ.

(Emphasis added.) The trial judge instructed the jury on both assault 2nd and assault 4th as lesser included offenses of the indicted offense of assault in the first degree. Appellant claims it was error to instruct on assault 2nd because the evidence was insufficient to support a finding by the jury that the victim, Lisa Eberle, sustained a serious physical injury.

Following the collision, Eberle was transported by ambulance to University Hospital where she was diagnosed with multiple contusions and strains, a laceration of the elbow which was sutured, and a cervical strain, described by Dr. Latino, the emergency room physician, as a stretching of the ligaments and muscles of the neck. She was discharged and referred to her family physician, Dr. Lynn Riley. Dr. Riley referred Eberle to Nichol for physical therapy. Nichol diagnosed headaches, cervical neck pain, lack of range of cervical motion caused by muscle spasms, upper thoracic pain, and numbness of the right arm. He administered physical therapy treatments to Eberle on twenty-seven occasions between June 20 and October 13, 2000. Because he was unable to relieve her symptoms, he suggested that Dr. Riley refer Eberle to a pain management specialist. Accordingly, Dr. Riley referred Eberle to Dr. David Zhou.

Dr. Zhou testified that he first saw Eberle on October 30, 2000, and diagnosed headaches and neck pain caused by the May 30, 2000, vehicular assault. He injected anti-inflammatory medications into her neck and prescribed oral anti-inflammatory medications and muscle relaxants. He continued to treat her periodically and was still treating her at the time of trial. Her last visit was on December 28, 2000, five days before trial. At that time, she still suffered from neck pain, although the numbness in her arms had improved and her headaches had dramatically improved. She was still taking oral anti-inflammatory medications and muscle relaxants and Dr. Zhou was considering referring her for additional physical therapy.

Eberle testified that her employment history included working in a department store, a factory, and as a roofer. At the time of the assault, she was employed full-time as a baby-sitter for children whose parents worked a night shift. After the assault, she quit work in part because of her injuries and the frequency of her physical therapy visits and in part because her domestic companion earned enough income from his employment to support both of them. She testified that she still suffers from neck pain and that she did not "choose not to work."

Appellant claims that Eberle sustained only "substantial physical pain" as a result of the assault, thus only a "physical injury." The Commonwealth claims that Eberle also sustained "prolonged impairment of health" as a result of the assault, thus the jury was properly instructed on the offense of assault 2nd. We agree with the Commonwealth.

In *Luttrell v. Commonwealth,* Ky., 554 S.W.2d 75 (1977), we held that a police officer who was shot in the chest with bird shot, was hospitalized for five days, and

was off work for approximately six weeks had not, as a matter of law, sustained a serious physical injury. *Id.* at 77–79. And in *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), we held that a child who sustained bruising, a swollen arm, and burns in and about the mouth from a cigarette or cigarette lighter, none of which required follow-up treatment after an emergency room visit, had not sustained a serious physical injury. *Id.* at 732. However, in *Commonwealth v. Hocker*, Ky., 865 S.W.2d 323 (1993), we held that an assault victim who sustained facial contusions and lacerations requiring sutures, the loss of several teeth which were successfully reimplanted, and a nondisplaced linear fracture of the skull followed by symptoms of concussion but no neurologic injury, was properly found to have sustained a serious physical injury. *Id.* at 324–25. In *Meredith v. Commonwealth*, Ky.App., 628 S.W.2d 887 (1982), the Court of Appeals held that the language, "impairment of physical condition," in the definition of "physical injury" simply means "injury." *Id.* at 888. *See also Hubbard v. Commonwealth*, Ky.App., 932 S.W.2d 381, 383 (1996).

We have not previously addressed what constitutes "prolonged impairment of health" in the context of the definition of "serious physical injury." However, in *Cronin v. State*, 454 A.2d 735 (Del.1982), it was held that evidence that two of the victim's teeth were dislodged during the assault, that subsequent dental surgery failed to leave the teeth in proper alignment, and that the victim was unable to chew certain foods for four months after the assault was sufficient evidence of "prolonged impairment of health" to constitute "serious physical injury." *Id.* at 736–37.

 We conclude that pain is an "impairment of health." If the pain is substantial, but not prolonged, it constitutes a "physical injury;" but if it is prolonged, then it is a "serious physical injury." Eberle's injuries resulted not only in headaches and neck pain, but also muscle spasms causing decreased range of neck motion, and numbness of her right arm. The numbness continued at least until her treatment by Dr. Zhou, which did not begin until five months after the assault. A jury could reasonably believe from the evidence that the combination of pain, lost range of motion, and arm numbness contributed substantially to Eberle's decision not to return to public employment. A jury could also believe that Eberle was still suffering from the effects of her injuries on the day of trial, nineteen months after the assault, and that the duration of those effects constituted a "prolonged impairment of health." Thus, the jury was properly instructed on the offense of assault 2nd.

## VI. DOUBLE ENHANCEMENT.

 Appellant asserts that his sentences for DUI 4th and OSL/DUI 3rd were improperly enhanced under the PFO statute because the same offenses used to enhance the present DUI and OSL/DUI convictions to Class D felonies were also used to enhance prior offenses to Class D felonies, which were then used for present PFO enhancement.

The present DUI and OSL convictions resulted from verdicts rendered during the first phase of the trial. They were enhanced to DUI 4th and OSL/DUI 3rd during a second, separate phase of the trial. *See Com v. Ramsey*, Ky., 920 S.W.2d 526, 528–29 (1996) (prior DUI convictions used to enhance the underlying offense cannot be introduced in the guilt phase of the trial). To obtain the respective enhancements, the Commonwealth was required to prove three prior DUI convictions occurring within five years of May 30, 2000, and

two prior OSL/DUI convictions. KRS 189A.010(5)(c), (10); KRS 189A.090(2)(c).[3] The Commonwealth proved *five* prior DUI convictions occurring on April 21, 1999, November 11, 1997, October 20, 1997, July 22, 1997, and January 20, 1997;[4] and two prior OSL/DUI convictions occurring on November 11, 1997, and October 20, 1997. After hearing this evidence, the jury returned additional verdicts enhancing the original convictions to DUI 4th and OSL/DUI 3rd, Class D felonies.

The trial then proceeded into the combination penalty/PFO phase. KRS 532.055(2), (3). For PFO 1st enhancement, the Commonwealth was required to prove at least two prior felony convictions, one of which must have satisfied one of the time limitation requirements in KRS 532.080(3)(c), *e.g.*, that Appellant completed service of the sentence imposed on any of the prior felony convictions within five years prior to the date of the commission of the present felony offense. *Id.*, (3)(c)(1). The Commonwealth proved four prior felony convictions,[5] *i.e.*, DUI 4th and OSL/DUI 3rd convictions occurring on March 24, 1998, and two separate convictions of obtaining controlled substances by fraud or forgery, KRS 218A.140(1)(c), occurring on April 24, 1990, and October 31, 1990. Because the sentences for the March 24,

1998, convictions were ordered to be served concurrently, they merged into one conviction for PFO purposes. KRS 532.080(4). The Commonwealth concedes that only the March 24, 1998, convictions satisfy the time limitation requirements of KRS 532.080(3)(c)(1) and KRS 532.080(2)(c) (same requirements apply to PFO 1st and PFO 2nd enhancement). Thus, if that conviction cannot be used for PFO enhancement of his present DUI 4th and OSL/DUI 3rd convictions, the enhanced sentences for those convictions must be vacated.[6]

We agree that at least some of the same prior convictions used to enhance the offenses underlying the March 14, 1998, convictions to Class D felonies were also used to enhance to Class D felonies the DUI and DUI/OSL offenses of which Appellant was convicted in this case. However, the 1998 DUI 4th conviction was only one offense, not four offenses consisting of that offense plus the three prior offenses used to prove that the offense was a Class D felony. Likewise, the 1998 DUI/OSL 3rd conviction was for only one offense, not three offenses; Appellant's present conviction of DUI 4th is for only one offense, not four; and his present conviction of OSL/DUI 3rd is for only one offense, not three. The only prior DUI and DUI/OSL convic-

---

**3.** As of May 30, 2000, KRS 189A.090 did not require that the prior OSL/DUI convictions have occurred within five years of the present offense. *See Commonwealth v. Garnett*, Ky. App., 8 S.W.3d 573, 575 (1999). That omission was corrected by a 2000 amendment that did not become effective until October 1, 2000. 2000 Ky. Acts, ch. 467, § 7. Now see KRS 189A.090(3).

**4.** There is evidence in the record of at least two more DUI convictions occurring on June 28, 1997, and June 18, 1997.

**5.** In fact, the Commonwealth proved eight prior felony convictions but the jury was instructed on only four.

**6.** The Commonwealth argues that even if Appellant is correct, the issue is mooted by the fact that the March 24, 1998, convictions could still be used to enhance the assault 2nd conviction to twenty years, the maximum aggregate sentence that can be imposed under KRS 532.110(1)(c). However, if a federal court should, on habeas review, disagree with our Confrontation Clause analysis in Part III of this opinion, *supra*, that conviction and its twenty-year sentence would be vacated, leaving only the enhanced fifteen-year sentence for criminal mischief 1st.

tions used to obtain PFO enhancement of Appellant's present convictions were the March 24, 1998, felony convictions. Since those convictions were not used to enhance Appellant's present DUI and DUI/OSL convictions to Class D felonies, they were properly used for PFO enhancement under KRS 532.080(6)(b). *Corman v. Commonwealth*, Ky.App., 908 S.W.2d 122, 124 (1995) (prior conviction of OSL/DUI 3rd could be used for PFO enhancement of present conviction of DUI 4th even though a prior DUI conviction that was a predicate for the OSL/DUI 3rd conviction was also used to prove that the present conviction was Appellant's fourth DUI conviction). *See also Commonwealth v. Grimes*, Ky., 698 S.W.2d 836, 837 (1985) (penalty for second offense controlled substance conviction could be further enhanced under PFO statute where the prior offense used for PFO enhancement was not the same prior offense used to prove that the underlying controlled substance offense was a second offense); *Eary v. Commonwealth*, Ky., 659 S.W.2d 198, 200 (1983) (penalty for conviction of possession of a handgun by a convicted felon, KRS 527.040, could be further enhanced under PFO statute where prior felony conviction used to prove the convicted felon element of the underlying offense was a different conviction from those used for PFO enhancement).

Accordingly, the judgment of convictions and sentences imposed by the Jefferson Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs in part and dissents in part by separate opinion, with STUMBO, J., joining that opinion.

Opinion by Justice KELLER concurring in part and dissenting in part.

I simply cannot decide what I find most troubling about Part IV (Witness Deposition) of the majority opinion. I have, however, prepared a "short list." First, despite the fact that the Commonwealth has never—either in the trial court or in its brief to this Court—uttered or written the word "waiver" as a justification for its introduction at trial of the videotaped deposition of licensed physical therapist Timothy Nichol, the linchpin of the majority's basis for affirming Appellant's Second–Degree Assault conviction is the majority's factual determination that Appellant's federal and state constitutional rights of confrontation were waived by his trial counsel's agreement to depose Nichol.[1] Second, the majority opinion's finding that the Appellant acquiesced in the waiver is unreasonable because the wording of the multiple part question asked by the trial court and the Appellant's answer do not support the majority opinion's conclusion that Appellant acquiesced in the waiver of his right to confront Nichol, particularly so because " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights."[2] Third, the majority opinion proceeds with optimism reminiscent of Charlie Brown's inexplicable faith that his placeholder, Lucy, will

---

1. *Parson v. Commonwealth*, Ky., 144 S.W.3d 775, 783 (2004) ("Appellant clearly waived his right to confront Nichol at trial when defense counsel agreed that the testimony of medical witnesses could be presented by deposition.").

2. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) (*quoting Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 812, 81 L.Ed. 1177 (1937) and *Hodges v. Easton*, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169 (1882)).

break form "the next time" and keep the football in place rather than yank it away at the last second when it bases its "waiver" finding upon the same legal conclusion—that counsel can unilaterally effect such a waiver—for which the Sixth Circuit "took us to the woodshed" a decade ago in *Carter v. Sowders*.[3] And, fourth, although it is black-letter law that the right of confrontation secured by the Sixth Amendment is "basically a trial right[,]"[4] the majority employs a harmless error analysis that appears to render harmless the introduction at trial of any videotaped deposition as long as the defendant had an opportunity to cross-examine the witness at the deposition itself. Suffice it to say that I disagree with the majority's view that Appellant's trial counsel's agreement to depose Nichol waived Appellant's constitutional rights of confrontation or that Appellant acquiesced to a waiver. Accordingly, consistent with my consistently-held position that any waiver of important constitutional protections must come from the defendant himself or herself,[5] I dissent in part as to Appellant's Second–Degree Assault conviction, which I would reverse and remand for a new trial because there is no evidence in this record to suggest that Appellant *himself* knowingly, voluntarily, and intelligently relinquished or abandoned his right to confront Nichol at trial.

Before I elucidate further regarding the concerns that made my "short list," however, I feel the need to clarify the record. The majority opinion states:

> On the morning of the second trial date, November 6, 2001, Appellant again requested and was granted a continuance, this time because defense counsel's investigator, who might be called as a witness, was ill (the defense counsel's investigator did not testify when the trial was finally held), and because defense counsel might possibly have a medical problem as well.[6]

Although Appellant's trial counsel, Robert D. McIntosh ("McIntosh") cited the unavailability of a defense investigator as one

---

**3.** 5 F.3d 975 (6th Cir.1993) (granting habeas relief in the face of a confrontation clause violation that, in *Carter v. Commonwealth*, Ky., 782 S.W.2d 597 (1989), this Court found had been waived). *See id.* 5 F.3d at 981 n. 3 (6th Cir.1993) (observing that this Court's opinion in *Carter* "conflicts with our reading of [*Johnson v.*] *Zerbst* [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ]" and suggesting that the "personal waiver by defendant" view applied in the plurality opinion in *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989) was correct). I would observe that the majority's holding is difficult for me to comprehend because it is clear that the majority is cognizant of *Carter v. Sowders*, which it not only cites, *Parson*, 144 S.W.3d at 784 n. 2, but also implicitly references while acknowledging the possibility that the federal courts will someday, "on habeas review, disagree with our Confrontation Clause analysis in Part III[sic] of this opinion[.]" *Parson*, 144 S.W.3d at 788 n. 6. "By abdicating its responsibility to correct the error ... today's majority needlessly prolongs this litigation and [gives the Commonwealth what will likely turn out to be a] hollow victory." *Taylor v. Commonwealth*, 63 S.W.3d 151, 170 (2001) (Keller, J., dissenting).

**4.** *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968).

**5.** *See Jackson v. Commonwealth*, Ky., 113 S.W.3d 128 (2003) (right to trial by jury); *Crawley v. Commonwealth*, Ky., 107 S.W.3d 197, 203–04 (2003) (Keller, J., dissenting) (right to testify); *Johnson v. Commonwealth*, Ky., 103 S.W.3d 687, 700 n. 6 (2003) (Keller, J., dissenting) (right to trial by jury and right to protection from compelled self-incrimination); *Fugate v. Commonwealth*, Ky., 62 S.W.3d 15, 22–28 (2001) (Keller, J., dissenting) (right to be present).

**6.** *Parson*, 144 S.W.3d at 782.

reason for his request for a continuance, his written motion also stated that "[c]ounsel for the defendant will be potentially unavailable one day of the week of November 5—November 9, 2001[,]" and his affidavit attached to the motion explained that "I, the attorney for Mr. Parson, will be potentially be [sic] unavailable due to a personal medical condition which will require further medical tests during the week of November 5—November 9." The majority opinion grudgingly mentions this alternative basis although the record clearly reflects that the trial court granted the requested continuance primarily because of defense counsel's medical concerns:

> Court: We have talked several times this morning off the record. This is the first time we have been on the record. And Mr. McIntosh, you've tendered to the Court this morning a motion to reassign the trial date and first of all, I assume you've talked to your client about it, your client knows you are asking the Court to do this.
>
> McIntosh: Yes. I have your honor.
>
> Court: Do you want to address your motion on the record?
>
> McIntosh: To a certain extent, yes, but to some extent as I have expressed this morning, I don't want to.
>
> Court: And the Court understands that and I think counsel do also, but as I understand it, *you are asking the Court to continue the case for trial both because an investigator from your office is not available and also because of some medical tests that you have to go through*
>
> McIntosh: That's correct. Ms. Nunn should be back on the 19th. She had surgery last Thursday, I believe it was and will be available on the 19th. As far as the other issue, I'm supposed to know something more by tomorrow afternoon at 3:00. As I have told the

Court, I have not told Ms. McCleod. I will be happy to do so. I just don't want to do it on the record.

> Court: Obviously, [Assistant Commonwealth's Attorney] Ms. McCleod, I know it puts you in an awkward position, but I assume the Commonwealth, at least for the record, objects to any continuance.
>
> McCleod: Judge, it does put me in an awkward position, but I just want to, for the record, and I feel it's important, not for today's [unintelligible], but in case the case is continued and we have another date, the Commonwealth is objecting to this continuance . . . . The other thing, I just want to note for the record so the Court will be sensitive to this, if we come back again, is that I have three doctors in this case. The medical testimony is going to be important in this case. I have three medical doctors, Judge, that have cleared their calendar now for the second time. They've shifted patients, or they've changed their shift or done something so in fact that they are free to testify at the Commonwealth's disposal tomorrow. Again, for a second time, I have now to call them and tell them that they now have wasted another day where patients won't be treated and that they, I don't know what they do. My eyewitnesses here today are not paid when they leave work. I have four witnesses, they have again taken another day, come to court, some witnesses have been here four times and are not paid to come and are now going to be told they need to come back another time.
>
> McIntosh: [Interrupting, during a pause] Judge, if—
>
> McCleod: [Interrupting] If I could just finish.

Court: Okay, Ms. McCleod finish up and then we'll talk about what we need to do about this.

McCleod: Thank you, Judge. As to Ms. Nunn, I don't, the only person she has even talked to is one witness who said she didn't know anything. And I would be able to—the Commonwealth could stipulate that Ms. Nunn doesn't know anything, the witness for the defense attorney. And I don't know what the medical condition is and I want to be sensitive to that but if it's possible, I don't know if it's possible, if we could roll this case to tomorrow in the event that Mr. McIntosh is able to continue, if he's going to be at work tomorrow, and we could try this case, roll it at least to tomorrow.

Court: Well, I guess first of all Mr. McIntosh, is that an option, to roll the case one day?

McIntosh: Um, Judge, I've expressed what my concern is. If the Court wants to roll this until tomorrow then that's the Court's decision. I would prefer to pass it a week, but if that's -

Court: Well, there is no passing it a week. As you all know, if we get a new trial date, you are looking at February at the earliest would be a new trial date. The Court has several concerns.

McIntosh: If I could address some of the things that were stated -

Court: *You don't need to because if you want a continuance and given the medical reasons, the Court's going to grant the continuance. I would do it for any attorney. I don't think there's any need to discuss that further.*

Regarding the merits of the issue addressed in Part IV of the majority opinion, I agree completely with the majority opinion's observation that "[o]bviously, Nichol was not 'unavailable' in the constitutional sense." [7] And, I hardly need mention that constitutional unavailability is an absolute precondition to the admission at a criminal trial of an out-of-court testimonial statement.[8] Accordingly, "unless petitioner did actually waive his right to be confronted with and to cross examine th[is] witness[ ], his federally guaranteed constitutional rights have been denied." [9] Therefore, the dispositive issue in this case is whether Appellant waived his right to confront Nichol at trial. We cannot presume a waiver of Appellant's Confrontation Clause rights from a silent record.[10] Thus, we must examine the record and evaluate "the facts which allegedly support the waiver" [11] in accordance with the relevant constitutional standards, under which "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' " [12] In addition, "[t]he determination

7. *Parson,* 144 S.W.3d at 783.

8. *Crawford v. Washington,* 541 U.S. 36, ——, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177, —— (2004) ("Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted *only where the declarant is unavailable,* and only where the defendant has had a prior opportunity to cross-examine." (emphasis added)).

9. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314, 317 (1966).

10. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–80 (1969).

11. *Brookhart,* 384 U.S. at 4, 86 S.Ct. at 1247, 16 L.Ed.2d at 317.

12. *Id.* (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461,

of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." [13] The videotaped record in the case reveals the following:

> Court: ... Depending upon what's going on medically, *if these doctors are available tomorrow, one option would be to take video depositions of them. They could come into court, they could take video depositions and that way their testimony would be secured, they wouldn't have to come back for trial. That would be one option at least as to the medical doctors.* The Court realizes that it's an inconvenience for the prosecuting witnesses, that's just something we have to deal with all the time ...... I think maybe counsel *and I need to talk off the record about what where exactly Mr. McIntosh, you stand with medical things to see at a minimum if these doctors can be deposed tomorrow to take care of that.*

> McIntosh: *I would be willing to do that, Judge.* That's, I understand Ms. McCleod's issue with the doctors and certainly they have schedules that are just like ours. *If that was to be done tomorrow, I can do that.*

> ....

> Court: [To Appellant] I understand that you thought that their offer was too high, and I talked to the Commonwealth about possibilities of what a jury could do, what they could not do, and tried to get it in a range where we thought that it might be negotiable, so I will at least talk to them briefly and see if we are even, and give you a number, and then you can just decide, if it's a number that you can either accept or come back with a reasonable counter offer, we can talk more. If not, then we will at least get these doctors deposed tomorrow and the next trial date, we'll let a jury decide the whole thing.

> Parson: That would be fine, your honor.

The court then went off the record and the parties discussed the possibility of a negotiated plea, but apparently were unable to reach a mutually-agreeable disposition. The trial court then reconvened the proceedings on the record and continued the discussion with Assistant Commonwealth's Attorney Foster:

> Court: It's my understanding you all [can] at least bring in the doctors tomorrow and take video depositions to preserve their testimony.

> Foster: Your honor, I'm coordinating the medical proof in this case and I'm going to try, what I'm going to do is basically give them the option, if that's okay with the Court, give them the new trial date. *I know one of the, the physical therapist, would like to do the video deposition* [14] *but he asked if we could have it another day. Would it be possible for me to just work it*

1466 (1938)). *See also Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968) (also applying *Zerbst's* definition of a waiver); *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353, 359 (1970) (citing *Zerbst*).

**13.** *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466.

**14.** I find it worthy of note that Nichol, who is neither an M.D. nor a Ph.D.—and was thus not contemplated in any of the previous discussions about taking video depositions of "the doctors"—apparently informed the Commonwealth of his desire to testify via video deposition *before the new trial date was selected, and thus before any scheduling conflict presented itself.*

*out with the Court, when we come back and use the courtroom, to take the deposition?*

McIntosh: *Judge, we have no problem with that.*

Foster: We'll work with everybody.

Court: That's fine. My concern is we're scheduled to be here tomorrow anyway.

McIntosh: I think they've already -

Foster: I called them thinking that the case was going to be continued and had already said, you know, that's what I was doing when I left the courtroom, and I've only been able to get one of them back on the phone.

McIntosh: *I think that it would be better to wait and see if they're going to even be unavailable.*

Foster: They may want to come to the trial.

Court: Okay, then I'll just get Maggie and get another trial date and we'll go from there.

Later, after the video deposition, at which Appellant learned more information relevant to Nichol's alleged inability to testify in person at trial, Appellant's trial counsel moved the trial court to prohibit the Commonwealth from introducing Nichol's video deposition at trial. The transcript of the hearing on Appellant's motion reveals that: (1) apparently neither the trial court nor the Commonwealth were cognizant of the constitutional dimensions of "unavailability," and (2) the Commonwealth *never* asserted Appellant's waiver as a basis for the introduction of Nichol's video deposition:

Court: What issues do we need to take up this morning?

McIntosh: I think, Judge, what we need to take up is the issue of the use of this video deposition at the trial. I think that's pretty much -

Court: [Interrupting] Which video deposition is that?

McIntosh: Well, we've only taken one, and that would be of Mr. Tim Nichol.

Court: Okay. And, what's the issue about the use of the deposition?

McIntosh: Well, he has to be unavailable for the trial and I don't think that, he stated in his deposition that he was going to be on vacation through January 2nd and then would be at a national meeting from January 3rd through January 7th. And I, on my client's behalf, I don't think that that's a valid excuse for his unavailability. Someone's vacation, be it unfortunate that he would not be able to go on vacation, does not excuse him from the fact that he has to testify. If they don't want him to testify, I certainly think they've got enough other doctors to bring in, if they wanted to use them. I don't think that that constitutes unavailability.

Court: Ms. McCleod?

McCleod: Ms. Foster's going to address the Court, Judge.

Foster: Judge, under Rule [RCr] 7.10, the Court is granted discretion to determine when a witness may be unavailable for trial. And we actually brought Mr. Nichol in today, if the Court has any additional concerns about his unavailability. Mr. Nichol, he testified in his deposition that he is out of town for vacation through the 2nd of January. He will not be coming in until that night, and then he's going to turn around the next day and fly out to Las Vegas? To Las Vegas.

Court: And that quote the next day, is the day the trial is supposed to start. Right?

McIntosh: January 2nd is the day

Foster: The trial starts on the 2nd.

Court: Okay, then when does he get back from vacation?

Nichol: [From the audience] I will be back on Monday, the 7th.

Court: Okay, so when do you go on vacation?

Nichol: Well, the day that I was supposed to be here is the day that I'm leaving for a national meeting for our company, which would be the 3rd.

Court: Okay, so you are leaving on the 3rd to go to this meeting and then vacation after the meeting or -

Nichol: Vacation is before, I will be leaving on December 28th and returning on the 2nd.

Court: Okay. Mr. McIntosh, I don't understand what the issue is.

McIntosh: That constitutes unavailability? Unavailability is someone who is dead, someone who is in the hospital or unable to communicate, I don't think, I haven't seen anything that indicates vacation constitutes unavailability. It's unfortunate and I'm sorry for that, but at the same time -

Court: It doesn't sound like the vacation is the issue. The issue is this meeting he has to go to.

McIntosh: His vacation is from the 28th until the 2nd. He could be called in on the 2nd to testify and then he can fly out and be at his meeting by the 3rd.

Foster: First of all, Judge, I think Mr. McIntosh needs to provide some sort of authority that says you have to be dead to be unavailable.

Court: First of all, you are presuming that we going to get a jury seated and selected and be ready, I mean we just started a trial Tuesday and the first witness was called Wednesday morning. I mean you are presuming we will get that far, you are presuming that the Commonwealth will want to call him early in the proof, we've got his deposition. I don't understand what, I assume the deposition was also videotaped.

Foster: We have a videotape deposition, Judge, and he had an opportunity to fully cross-examine the witness

Court: Okay, it's real easy. I'll note your objection, overrule the objection, you all can do it by videotape, *if the Court of Appeals says it's wrong, it's wrong, but he's going to be out of town at a meeting during the period of the trial. I think that clearly establishes unavailability.*[15] If you disagree, that's why we got the Court of Appeals. They found me wrong before, if they don't agree, I'm sure they will tell us to do it differently.

Foster: Mr. Nichol is here, are you excusing him from the subpoena that he is under?

Court: Yes, I mean if you've got his video deposition

McIntosh: I think the subpoena he is referring to, correct me if I'm wrong, I subpoenaed him at our video deposition to be here on January 2nd for this trial.

Court: Okay, then he's excused for that, given the video deposition, he's excused, Mr. McIntosh's objection is

**15.** I would observe that today's majority opinion is the Kentucky appellate court "say[ing] it's wrong" that the trial court foreshadowed. Although framing its discussion in terms of the Commonwealth's argument rather than the trial court's ruling, the majority opinion explains that the trial court's analysis was incorrect. *See Parson v. Commonwealth*, Ky., 144 S.W.3d at 783 (2004) ("Contrary to the prosecutor's assertion at the December 20, 2001, hearing, the mere absence of the witness from the jurisdiction does not constitute 'unavailability,' and RCr 7.10(1) cannot be so interpreted.").

noted for the record, but that way we've got his testimony.

The majority opinion finds that "Appellant clearly waived his right to confront Nichol at trial when defense counsel, with Appellant's acquiescence, agreed that the testimony of medical witnesses could be presented by deposition,"[16] and, in support of that finding, cites *Richmond v. Commonwealth*,[17] with the parenthetical explanation "waiver by counsel: [The defendant] could have been present if his attorney had so chosen." I have previously explained my view that *Richmond* does not support this "waiver by counsel" notion.[18] Because I stand by my previous analysis, which employs the novel analytical method of quoting what the *Richmond* court actually said, *i.e.*, "obviously [Appellant's] absence was by choice. He could have been there. It is our opinion that *he* waived the right of confrontation."[19] To separate its holding from the "spin" placed upon it, I will not repeat that analysis here and will simply express my opinion that *Richmond* does not support today's majority's holding and reference my previous comments in that regard. Instead, I intend to focus in more depth on the question of whether counsel can waive a defendant's confrontation rights.

It is beyond dispute that an attorney cannot waive a criminal defendant's confrontation rights if the waiver is "inconsistent with his client's expressed desire."[20] In other factual situations, however, where the record is less clear as to whether the client objects to or agrees with counsel's purported waiver, or whether the client had been sufficiently informed to make such a choice, the waiver issue becomes more difficult to assess. While "[t]he majority of circuits that have addressed this question have stated that a defendant's attorney can waive his client's Sixth Amendment confrontation right 'so long as the defendant does not dissent from the attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy[,]"'[21] the Sixth Circuit does not subscribe to the majority view.[22] In *Carter v. Sowders*,[23] the Sixth Circuit stated that a waiver of confrontation rights requires the defendant's personal and knowing consent:

> Although a waiver may be implied and not express, there must be evidence in the record to support that implication. This court's statement in *Evans v. United States*, 284 F.2d 393 (6th Cir. 1960) is directly applicable: "the record does not show that defendant knew or was advised of his rights. In order to constitute a waiver, there must be a voluntary relinquishment of a *known* right." *Id.* at 395. We find Carter did not personally waive his right to confront Elam.

The district court found that Carter nonetheless effected a waiver of this right through the actions of his attorney,

---

**16.** *Parson*, 144 S.W.3d at 783.

**17.** Ky., 637 S.W.2d 642 (1982).

**18.** *Fugate v. Commonwealth*, Ky., 62 S.W.3d 15, 26–27 (2001)(Keller, J., dissenting).

**19.** *Richmond*, 637 S.W.2d at 646 (emphasis added).

**20.** *Brookhart v. Janis*, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314, 319 (1966).

**21.** *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir.2001) (*quoting United States v. Reveles*, 190 F.3d 678, 683 n. 6 (5th Cir.1999)).

**22.** *Id.* (citing *Carter v. Sowders*, 5 F.3d 975, 981–82 (6th Cir.1993) as a "but see").

**23.** *Carter v. Sowders*, 5 F.3d 975 (6th Cir. 1993).

who appeared for the deposition and then departed. We find this conclusion inconsistent with *Zerbst.* As the Second Circuit stated in *United States v. Crutcher,* 405 F.2d 239, 243 (2nd Cir. 1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), referring to defense counsel's decision to proceed with jury impaneling in the defendant's absence: "[E]ven assuming [counsel] had the authority to act as Payne's counsel, he would not have had the ability to bind Payne to a decision of this type without obtaining Payne's consent." The Tenth Circuit came to a similar conclusion in *Larson v. Tansy,* 911 F.2d 392, 396 & n. 2 (10th Cir.1990):

> The record indicates defendant's counsel, and not defendant, waived defendant's right of presence at trial. The trial court never directly addressed defendant concerning his counsel's request to conduct the remainder of the trial in defendant's absence. We hold that defendant did not waive his right to be present.... Even if defense counsel could have validly waived defendant's right to be present for the conclusion of his trial, where defense counsel did not consult with defendant concerning the waiver and did not obtain defendant's consent, the waiver will not be binding on defendant.

We similarly find that, even if Waller's action at the deposition could constitute a waiver of the defendant's rights under the Confrontation Clause, the waiver would not bind Carter in the absence of a showing that he consented.[3] As the Supreme Court stated in *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975): "It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him' .... The right to defend is given directly to the accused, for it is he who suffers the consequences if the defense fails."

[3] The Kentucky Supreme Court found that "Carter's right to confront Elam at the deposition was waived" because "[a]mple notice of the deposition was provided to Carter's counsel ... There was no evidence that Carter, personally, had a legal reason why he was unable to attend, and no proof that his presence would have made a difference." *Carter,* · 782 S.W.2d at 599. This obviously conflicts with our reading of *Zerbst.* Moreover, the Kentucky Supreme Court made statements in an opinion decided the same day, *Dean v. Commonwealth,* 777 S.W.2d 900 (Ky.1989), that would lead to precisely the opposite result from that reached in *Carter:*

> We hold that because the right to be present and to confront is personal to the accused under Section 11 of the Kentucky Constitution, and more particularly under [Ky. R.Crim.Proc.] 7.12, only the defendant can waive this right. The waiver must be sufficiently clear "as to indicate a conscious intent." *Powell v. Commonwealth,* 346 S.W.2d 731, 734 (1961).... [A]ppellant's counsel waived appellant's right to be present at the depositions of the two prosecution witnesses. There is no indication in the record that it was appellant's conscious intent to waive this right and his consequent right to cross-examination. Counsel's waiver being ineffective, there was no waiver.... Appellant was not present; nor was he afforded the right to confront and cross-examine the witnesses called to testify against him.

*Id.* at 903. We can discern no reason why a different standard was used in

deciding Carter's fate.[24]

In other words, "a waiver cannot be based on statements made by a defendant's lawyer who has not first consulted with his or her client[,]"[25] and a criminal defendant's constitutional rights of confrontation can be waived only by the personal consent of the defendant—although the consent itself can be communicated either expressly, *e.g.*, in an on-the-record colloquy, or by conduct, *e.g.*, through informed acquiescence in counsel's agreement to the admission of an out-of-court statement.[26]

In the case at bar, the majority suggests that Appellant acquiesced in the waiver of his right to confront Nichol when he responded "[t]hat would be fine, your honor." However, this response was to a somewhat meandering "question" from the trial court that touched upon (1) Appellant's past belief that the Commonwealth's plea offer was unreasonable, (2) the trial court's past and proposed future communications with the Commonwealth regarding the possibility of obtaining a new plea offer that Appellant might find more palatable, (3) the fact that, if the Commonwealth extended a new plea offer to Appellant, it would be his choice whether to accept the offer, to make a counter-offer, or to reject further plea negotiations, and (4) that if the parties were "too far apart" in the plea negotiations, the possibility of deposing "the doctors" the next day, but setting the case itself for trial by jury on a future date. Based on the multitudinous nature of the "question" and other concerns developed later in this opinion, I do not believe it is reasonable to characterize Appellant's affirmative response as an express, knowing, and voluntary waiver of his right to confront Nichol at trial. The majority also hangs its hat on what it paraphrases as Appellant's trial counsel's agreement "that the testimony of medical witnesses could be presented by deposition."[27] Given that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights,"[28] however, I believe that it is necessary to engage in a more-exacting scrutiny of *what exactly* Appellant's trial counsel agreed to do before we even reach the issue of the validity of counsel's purported waiver.

In my view, the majority opinion adopts an overly-broad and factually-suspect interpretation of Appellant's trial counsel's

---

24. *Carter v. Sowders*, 5 F.3d at 981–82. I wish to make a couple of additional observations with regard to this Court's prior "waiver" jurisprudence. First, the Sixth Circuit's apparent approval of the "personal waiver" approach taken by a plurality of this Court in *Dean* fits nicely with the view I express today and have expressed in the past. *See Fugate*, 62 S.W.3d at 26 (Keller, J., dissenting) ("I find the reasoning in *Dean* not just persuasive, but compelling, and I note that today's majority makes no serious attempt to refute [it]."). Second, *Carter v. Sowders* also provides support for my criticism that *Richmond* has been misapplied by this Court. The *only* authority this Court cited in *Carter v. Commonwealth* in support of its conclusion that Carter's right of confrontation "was waived" was *Richmond*. *Carter v. Commonwealth*, 782 S.W.2d at 602. The Sixth Circuit's holding in *Carter v. Sowders* thus casts doubt upon *Rich-*

*mond* 's utility as authority for a "waiver by counsel" hypothesis.

25. *United States v. Marshall*, 248 F.3d 525, 535 (6th Cir.2001).

26. *Brookhart*, 384 U.S. at 8, 86 S.Ct. at 1249, 16 L.Ed.2d at 319; *Marshall*, 248 F.3d at 535 ("Waiver may also be implied from the defendant's conduct.").

27. *Parson v. Commonwealth*, Ky., 144 S.W.3d at 783 (2004).

28. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) (*quoting Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 812, 81 L.Ed. 1177 (1937) and *Hodges v. Easton*, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169 (1882)).

statements. My review of the record, which can be verified from the above verbatim recitation of it, reveals that Appellant's trial counsel first agreed to take the video depositions of "the doctors" (or "the medical doctors") with the understanding that those witnesses "wouldn't have to come back for trial." Later, after the Commonwealth indicated that a physical therapist witness (Nichol) had expressed an interest in "doing the video deposition" on a future occasion, the Commonwealth asked the trial court whether "it [would] be possible . . . to just work it out with the Court, when we come back and use the courtroom, to take the deposition?" and counsel responded "we have no problem with that." Unlike the earlier discussion concerning "the doctors," [29] however, there was no warning to Appellant, on the record or otherwise, that taking Nichol's video deposition would excuse him from testifying at trial, and Appellant's trial counsel specifically noted that the "wait and see" approach made the most sense because it was not clear whether the witnesses were "going. to even be unavailable." Thus, if we are faithful to the presumption *against* waiver that United States Supreme Court jurisprudence requires us to apply, we should construe Appellant's trial counsel statements as an agreement only to take Nichol's deposition *in the event that Nichol was unable to testify in person at trial*—not, as the majority interprets those statements, as an agreement that Nichol's video deposition could be admitted at trial.

Of course, it is unnecessary to devote a great deal of energy to interpreting the scope of Appellant's trial counsel's agreement because it is crystal-clear from the video record that Appellant's trial counsel did not engage in any consultation with Appellant on November 6, 2001 before counsel agreed to take Nichol's deposition. At no point does trial counsel ever lean over to Appellant to inform him of what such an agreement would entail or to solicit his input on the decision. It is also worthy of note that although the trial court had previously verified with counsel that the request for a continuance was the product of consultation with Appellant (presumably to verify that the waiver of Appellant's right to a speedy trial was Appellant's own), *i.e.,* "I assume you've talked to your client about it, your client knows you are asking the Court to do this[,]" the trial court made no such effort to determine whether Appellant gave his consent for his counsel's agreement to take the video depositions. Under prevailing Sixth Circuit jurisprudence, any agreement made by Appellant's trial counsel could not prevent Appellant from asserting his constitutional right to confront Nichol.[30]

Of course it is undeniable that Appellant was present when the parties actually took Nichol's video deposition, and an argument can be made that his acquiescence in his trial counsel's actions indicated his waiver of his right to confront Nichol. However,

---

29. The discussions in the trial court regarding taking the video depositions of "doctors" and "medical doctors" is clearly traceable to Assistant Commonwealth Attorney McLeod's reference to the Commonwealth's "three medical doctor[]" witnesses who would be inconvenienced by the continuance. And, any agreement reached to take the video depositions of "the doctors" could not possibly represent a waiver of Appellant's right to confront Nichol, who, as stated previously, *supra*

note 15, is not a doctor. In fact, however, this first agreement was never performed because the medical doctors in question testified in person at Appellant's trial.

30. *Marshall,* 248 F.3d at 535. *Cf. Jackson v. Commonwealth,* Ky., 113 S.W.3d 128, 133 (2003) ("'[Appellant's] attorneys' statements did not and cannot constitute a constitutionally valid waiver of his right to trial by jury.").

"we 'do not presume acquiescence in the loss of fundamental rights.' "[31] And, in the context of this case, the mere fact that Appellant participated in the taking of Nichol's video deposition does not come close to demonstrating that Appellant had knowingly and voluntarily waived his confrontation rights at trial. There is nothing in the record to suggest that Appellant had ever been informed that taking Nichol's video deposition would forfeit his right to confront Nichol at trial. In fact, Appellant's trial counsel's service of a subpoena upon Nichol following the video deposition and his subsequent motion to prohibit the introduction of the video deposition reflect that counsel himself believed that the admissibility of the deposition would be subject to a finding that Nichol was unavailable to testify in person at trial, and we certainly have no reason to suspect that he counseled Appellant otherwise. Without evidence that Appellant was cognizant of the nature of his Confrontation Clause rights or the consequences of agreeing to take Nichol's testimony, i.e., that the trial court would permit the Commonwealth to introduce the video deposition in lieu of Nichol's live testimony, there could be no constitutionally valid waiver.[32]

Simply stated, the record before the Court is insufficient to support a finding that Appellant himself waived his constitutional right to confront Nichol at trial. Accordingly, the trial court erred when it allowed the Commonwealth to introduce Nichol's video deposition at trial. The majority opinion makes no attempt to argue that the *substance* of Nichol's testimony was harmless, and it is clear that Nichol's testimony, which tended to support a finding of one of the hallmarks of a serious physical injury, *e.g.*, "prolonged impairment of health,"[33] could have been a significant factor in the jury's verdict finding Appellant guilty of Second–Degree Assault. Instead, the majority asserts that the error was harmless because Nichol had been cross-examined by Appellant at the video deposition.[34] After considerable research, I can report that there is a complete dearth of authority for this proposition, which would be akin to "Tide with Bleach®" for improperly-admitted out-of-court testimonial statements as it would render any and all cross-examined deposition testimony admissible at a criminal trial. The opportunity for face-to-face confrontation *at some point either at or prior to trial* is not the only interest at stake. Earlier this year, the United States Supreme Court made it clear that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability *and* a prior opportunity for cross-examination."[35] The majority's

---

**31.** *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (*quoting Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093, 1103 (1937)).

**32.** *Cf. Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968) (holding that Barber's failure to cross-examine a witness at a preliminary hearing did not constitute a waiver of his right to confrontation because Barber could not have anticipated that the witness would be unavailable to testify at trial); *Carter v. Sowders*, 5 F.3d 975, 981 (6th Cir.1993) (holding that, even if Carter had received a letter from his attorney advising him of the scheduled deposition, the letter did not "urge him to exercise" his right to be present and "did not provide Carter with any notice of the consequences if he failed to appear").

**33.** KRS 500.080(15).

**34.** *Parson v. Commonwealth*, Ky., 144 S.W.3d at 784–85 (2004).

**35.** *Crawford v. Washington*, 541 U.S. 36, ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177, —— (2004) (emphasis added).

harmless error analysis ignores the "and" by allowing the opportunity for cross examination to swallow the constitutional requirement of unavailability. I find it an inescapable conclusion that Nichol's testimony was erroneously admitted, and it prejudiced Appellant in connection with his Second–Degree Assault conviction. Because I see none of the "footprints" of "invited error" [36] that would warrant additional fact-finding by the trial court, I would reverse Appellant's Second–Degree Assault conviction and remand that count of the indictment to the trial court for a new trial.

STUMBO, J., joins this opinion, concurring in part and dissenting in part.

---

**36.** *See, e.g., Jackson v. Commonwealth,* Ky., 113 S.W.3d 128, 134–36 (2003).