RENDERED: FEBRUARY 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0060-MR

GREGORY SHIELDS, SR.                                              APPELLANT

V.

ON APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN GRISE, JUDGE
NO. 17-CR-00339

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

The sole question presented on this appeal is whether testimony taken at a preliminary hearing may be used as evidence at trial when the witness is unavailable due to her death. We conclude that the trial court did not abuse its discretion by denying Appellant Gregory Shields, Sr.'s motion to exclude the deceased eyewitness's preliminary hearing testimony. Under the facts of this case, Shields's Sixth Amendment right to confront the witness was not violated because he had an adequate opportunity to cross-examine the witness at the hearing and in fact did so, asking several questions without any limitation by the presiding judge.

## FACTS AND PROCEDURAL BACKGROUND

Shields lived with and cared for his uncle and aunt, Samuel and Maude Murrell. In early February 2017, the Bowling Green Police Department responded to Shields's call that his uncle had been murdered. Upon their arrival, officers observed that Samuel had cuts to his chest, neck, arms and wrist. Shields gave inconsistent stories of what had occurred. Mrs. Murrell initially gave police an account involving an intruder, but then informed the police that Shields was responsible for Samuel's death. Shields was arrested and charged with murder and tampering with physical evidence. The arrest citation states in part:

> Dispatch received a 911 call from Gregory Shields stating there had been a murder at 1313 S. Lee Drive. Officers responded to the scene and located the victim, Samuel Murrell, deceased on the floor of his bedroom. Samuel's wife, Maude Murrell, was also present in the house. Maude first advised detectives an unknown person came in and assaulted her husband. She later stated Shields came into their bedroom and pulled the blanket off of her and her husband. She advised Shields started yelling and cussing at Samuel, then struck him twice in the head and neck area with his fist. She stated Shields then left the room, and returned with a knife. She advised he started "slashing" at Samuel, cutting Samuel in several areas. The location of the knife is currently unknown.

Shields was arraigned in district court the next day and appointed an attorney. At the preliminary hearing held a week later, both eighty-two-year old Mrs. Murrell and Detective Wartak testified. Mrs. Murrell described an infuriated Shields coming into the bedroom, pulling the covers off the bed, and yelling and complaining about the car he had bought from Samuel. Shields left the room, and returned with knives, one brown-handled and another black-

2

handled. Shields cursed at Samuel, called him names and accused Samuel of killing Shields's mother (Samuel's sister) who had died long ago, and criticized Shields's maternal grandmother (Samuel's mother) for treating Shields's mother poorly. Shields first cut Samuel on the arm, and when Samuel and Mrs. Murrell told him to stop, Shields repeated, "I don't care." Shields next cut Samuel on his wrist, and then his chest. At one point, Mrs. Murrell told Shields she was going to call 911, but did not when Shields threatened to slit Samuel's throat if she made the call. He put the knife up against Samuel's throat to support his threat.

At that point, Mrs. Murrell went to the garage to smoke and Shields subsequently came out to smoke. As she reentered the house, Samuel was calling for her, wanting the bloody bed sheets changed. With Shields's assistance, Samuel stood up using his walker, but fell shortly afterward, landing facedown and hitting his head. Shields helped Samuel off the floor, but as Samuel moved his walker to exit the room, he fell backwards onto the floor. Shields bandaged the knife wounds and also checked Samuel's pulse multiple times, stating initially that Samuel had a strong pulse. Within a few minutes, however, Shields announced that Samuel "was gone" and told Mrs. Murrell to call 911, but she insisted Shields make the call. Mrs. Murrell testified that at Shields's request, she did not tell the police the truth, but told a story about an unknown person attacking Samuel, Shields then apprehending the intruder, followed by the intruder escaping. Upon further questioning by the police at the scene, Mrs. Murrell told them that it was in

3

fact Shields who had hurt Samuel. The knives Shields used were later found by family members helping Mrs. Murrell replace the stained mattress and do the laundry. The knives were turned over to the police.

At the preliminary hearing Detective Wartak testified that although Mrs. Murrell initially told the story about the intruder, she followed that with a statement which mirrored her preliminary hearing testimony. Detective Wartak also explained that although the police went through piles of clothing within the home and garage, they did not find the knives during their search.

Defense counsel questioned Mrs. Murrell about the length of time she had known Shields, how long he had lived with them, and if the behavior she described was out of character for Shields. Mrs. Murrell stated that Shields did whatever she and Samuel needed and explained that he cooked, cleaned, washed clothes, took them to appointments and the grocery store, and paid the bills. Mrs. Murrell agreed that Shields's behavior was out of character, that Shields was mad and although he never said why, she assumed that it was because of car problems, given that was what he was talking about immediately before the incident. Defense counsel elicited from Detective Wartak that Shields told Officer Purvis, who recorded Shields's witness account, that "You're confusing me."

4

Based upon the testimony, the district court found probable cause and referred the case to the grand jury. Shields was indicted for murder, tampering with physical evidence, and being a persistent felony offender (PFO).[1]

Mrs. Murrell died in June 2018, sixteen months after the preliminary hearing. In anticipation that the Commonwealth would seek to use Mrs. Murrell's preliminary hearing testimony at trial, defense counsel moved to exclude her recorded testimony. Because no dispute existed as to Mrs. Murrell's unavailability, Shields's only issue was whether he had an adequate prior opportunity to cross-examine her as a witness. Shields argued that a preliminary hearing does not provide an adequate opportunity, or as he states—a "meaningful opportunity"—for a defendant to cross-examine a witness for trial purposes and admitting the testimony into evidence at trial would therefore violate Shields's right to confrontation.

At the hearing on Shields's motion, defense counsel offered multiple reasons why she did not have a meaningful opportunity to cross-examine Mrs. Murrell for trial purposes. She pointed out the purpose of a preliminary hearing is to determine probable cause and not the cross-examination of witnesses in place of that expected, by right and usual circumstances, to occur at trial. Defense counsel noted the local practice or usual expectations for a probable cause hearing, explaining that she could not recall a witness other than a law enforcement officer testifying at a preliminary hearing during her

---

[1] Shields was indicted in another case on charges of possession of a handgun by a convicted felon, possession of a firearm by a convicted felon, and being a PFO.

5

eight years of practice. Defense counsel further explained that with the questioning of preliminary hearing witnesses usually limited in scope, with no pre-hearing notice that Mrs. Murrell would be called as a witness in addition to the usual law enforcement witness(es), with only the arrest citation being provided in discovery at that time and with her own investigation limited to the week before the preliminary hearing, she was not prepared for questioning in the manner she would be for a murder trial. She noted that rather than having questions for a thorough cross-examination of the only witness to the alleged attack, she asked questions prepared during the hearing, and did not spend much time cross-examining Mrs. Murrell, an elderly, hearing-impaired, grieving widow. Defense counsel also identified other questions she likely would have asked, especially if other discovery, such as the medical examiner's report, had been received before the preliminary hearing.

The Commonwealth responded that defense counsel was afforded a full and fair opportunity to cross-examine Mrs. Murrell during the preliminary hearing, that she did cross-examine her without limitation, and that admission of Mrs. Murrell's sworn and recorded testimony into evidence at trial would not violate Shields's Sixth Amendment right. The Commonwealth further argued that notice that Mrs. Murrell would be called as a witness was not required, and that it was not a surprise to Shields that Mrs. Murrell was the sole witness to the event. Also, Shields knew Mrs. Murrell's advanced age, and those circumstances should have been considered in defense counsel's preparation for the hearing. Significantly, as the Commonwealth pointed out, defense

counsel did not make an objection, a request for a continuance or a request for additional information during the preliminary hearing.

In response to the trial court's questions at the hearing on the motion, the Commonwealth explained it met with Mrs. Murrell the day before the preliminary hearing and called her as a witness both to preserve the sole eyewitness's testimony for trial as a precautionary measure (while articulate and not exhibiting dementia, she was elderly) and to establish probable cause, although the detective's testimony alone was sufficient for that purpose. With the case still being in the investigative stage mere days after the murder, the Commonwealth had prepared and provided only the citation in discovery.

Focusing on whether defense counsel had the opportunity for meaningful cross-examination, the circuit court reviewed with defense counsel the questions asked and the questions she would have asked as part of a meaningful cross-examination at trial. They also discussed the practical impact on Shields's case of defense counsel not having asked Mrs. Murrell those questions. While in defense counsel's later discussion with Mrs. Murrell she made statements which Shields could have offered in mitigation, such as her statement that she had forgiven Shields,[2] the circuit court concluded in essence that the other questions defense counsel would have pursued if she had known she was cross-examining Mrs. Murrell for trial were not particularly helpful to Shields's defense. The circuit court acknowledged that the general

---

[2] The Commonwealth stated it likely would not object to the introduction of this statement if it were couched as Mrs. Murrell had forgiven Shields but still wanted him punished.

7

concept of Due Process would suggest the Commonwealth provide timely notice to defense counsel of its atypical decision to call a fact witness at the preliminary hearing to preserve the witness's testimony for trial and also provide discovery available at that point.

Relying on *Commonwealth v. Howard,* 665 S.W.2d 320, 322 (Ky. App. 1984), and *Parson v. Commonwealth,* 144 S.W.3d 775 (Ky. 2004), the circuit court denied Shields's motion to exclude Mrs. Murrell's testimony. The circuit court found that under the circumstances Shields was not denied a meaningful opportunity to cross-examine Mrs. Murrell, that she was subject to adequate cross-examination and that it was unclear that proper notice and timely discovery would have benefitted Shields or his counsel in any significant degree. Furthermore, Mrs. Murrell's testimony had the hallmarks of reliability.

In May 2019, following the denial of his motion, Shields entered a conditional guilty plea to first-degree manslaughter and to being a PFO in the first degree. In accordance with the plea agreement, he was sentenced to twenty-five years in prison, an enhanced sentence due to his PFO status. This appeal followed.

## ANALYSIS

Shields claims the circuit court abused its discretion when it denied his motion to exclude Mrs. Murrell's preliminary hearing testimony from trial under both the plain language of KRE 804(b)(1) and the Confrontation Clause

8

of the Sixth Amendment.[3]  He posits that the constitutional right to a "meaningful" cross-examination is "codified" in the evidentiary rule.

KRE 804(b)(1) is the hearsay exception for former testimony.  KRE 804(b), in relevant part, states:

> Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former testimony.  Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an **opportunity** and **similar motive** to develop the testimony by direct, cross, or redirect examination.

(Emphasis added.)

While an opportunity for cross-examination is required as an evidentiary matter, that opportunity also has constitutional ramifications.  *See Crawford v. Washington*, 541 U.S. 36, 61 (2004).  Citing *Crawford* for the premise that admission of a testimonial statement violates the Confrontation Clause of the Sixth Amendment if the defendant did not have an opportunity to cross-examine the declarant, Shields further cites *Davis v. Alaska*, 415 U.S. 308 (1974), for the premise that in order to qualify as a sufficient opportunity for cross-examination under *Crawford* and the Confrontation Clause, it must be an opportunity for "meaningful" cross-examination.[4]  Although *Davis* concludes

---

[3] The circuit court's denial of Shields's motion to withdraw his guilty plea is not part of this appeal.

[4] The *Davis* Court framed its analysis in terms of the "adequacy" and not the "meaningfulness" of the cross-examination.  In *Davis*, the Court refers to the Alaska Supreme Court's consideration of Davis's right to a meaningful confrontation.

9

that the defendant did not have an "adequate" opportunity to cross-examine a key prosecution witness during trial, *Davis* does not address what constitutes "adequate" preliminary hearing cross-examination which may be later used at trial when the witness is unavailable.[5] In light of this and our review of the

---

[5] In *Davis*, the United States Supreme Court granted certiorari to consider whether the Confrontation Clause requires that a defendant in a criminal case "be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency." 415 U.S. at 309. The Alaska Supreme Court affirmed Davis's conviction, 499 P.2d 1025, 1036 (Alaska 1972),

> concluding that it did not have to resolve the potential conflict in this case between a defendant's right to a *meaningful* confrontation with adverse witnesses and the State's interest in protecting the anonymity of a juvenile offender since "our reading of the trial transcript convinces us that counsel for the defendant was able adequately to question the youth in considerable detail concerning the possibility of bias or motive."

415 U.S. at 314-15 (emphasis added). Addressing the limited question of whether Davis, convicted of grand larceny and burglary, was denied the right under the Confrontation Clause to adequately cross-examine Green, a key prosecution witness on probation for burglary and who might have identified Davis as a suspect in stealing a safe and its contents from an Anchorage business to shift suspicion from himself, the Court noted that "the essential question turns on the correctness of the Alaska court's evaluation of the '*adequacy*' of the scope of cross-examination permitted." 415 U.S. at 315 (emphasis added). The *Davis* Court did not accept the Alaska Supreme Court's conclusion that the limited cross-examination was adequate. *Id.* at 318. The *Davis* Court concluded:

> [T]he jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.["]

other United States Supreme Court cases discussed *infra*, despite the trial court making a finding in regard to Shields's meaningful opportunity to cross-examine Mrs. Murrell, except where context requires it, we refrain from using "meaningful" in our analysis of this case to describe the type of cross-examination opportunity which must be afforded a defendant to satisfy the Sixth Amendment Confrontation Clause. The constitutional touchstone is an "adequate opportunity."

Before this Court, Shields maintains that KRE 804(b)(1) reflects the requirement of "meaningful opportunity" for cross-examination by requiring a "similar motive" to develop the witness's prior testimony.[6] As the Commonwealth notes, the specific issue of whether Shields had a similar motive during the preliminary hearing was not presented to the trial court. Although Shields believes the "meaningful opportunity" requirement is inextricably intertwined with KRE 804's "similar motive" requirement, he recognizes the trial court's order did not use the "similar motive" language in its conclusions, and otherwise requests palpable error review of the trial court's ruling.

---

*Id.* at 318 (citing *Smith v. Illinois*, 390 U.S. 129, 131, 88 S. Ct. 748, 750, 19 L. Ed. 2d 956 (1968)) (quoting *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S. Ct. 1245, 1246, 16 L. Ed. 2d 314 [(1966)]).

[6] Kentucky's former testimony provision, like the majority of states, repeats Federal Rule 804(b)(1)(B)'s language—that the prior testimony from that hearing "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Under a plain reading of KRE 804(b)(1), when the Commonwealth seeks to admit at trial an unavailable witness's preliminary hearing testimony, the Commonwealth must establish both prerequisites—opportunity to cross-examine and similar motive to cross-examine—at the prior hearing.

As noted above, the trial court addressed Shields's argument that his attorney did not have a meaningful opportunity to develop Mrs. Murrell's testimony for trial because of the lack of notice from the Commonwealth that she would, in fact, testify and because of the lack of discovery or opportunity to investigate the matter to prepare for the development of Mrs. Murrell's cross-examination. Although Shields's arguments that he was not afforded a meaningful opportunity due to the limited purpose of the probable cause hearing, the different evidentiary rules involved, and the short time between arrest and hearing may be viewed as having a "similar motive" undercurrent, the trial court resolved the issue by considering the actual questions Shields would have asked and concluding Shields had not shown his cross-examination of Mrs. Murrell was inadequate. Rejecting this approach, Shields complains that the trial court erred by downplaying the topics of cross-examination that defense counsel argued that she would have delved more deeply into if she had been given notice that the hearing was more than a mere preliminary hearing.

Under KRE 804(b), if the declarant is unavailable as a witness, the declarant's preliminary hearing testimony is not excluded by the hearsay rule from the trial of the defendant against whom the testimony was offered if two requirements are met—the defendant "had an opportunity" and "similar motive"—to develop the testimony by direct, cross-, or redirect examination. While the former testimony hearsay exception's "opportunity" for cross-examination is also properly analyzed under the constitutional standard of an

12

"adequate opportunity" for cross-examination, *see Crawford*, 541 U.S. at 61,

Shields, without citing authority, states that the "similar motive to develop

testimony" test is required by both KRE 804(b)(1) and the Confrontation

Clauses of the United States and Kentucky Constitutions.[7]

Neither this Court, nor our Court of Appeals, has directly addressed the

"similar motive" requirement in the context of a preliminary or probable cause

hearing, either through a challenge pursuant to KRE 804(b)(1) or pursuant to

the Confrontation Clause. *Howard* and *Parson*, relied upon by the trial court

when concluding Mrs. Murrell's preliminary hearing testimony is admissible at

trial, both address out-of-court-testimony reliability considerations.

In *Howard*, the Court of Appeals addressed whether under Kentucky

Rule of Criminal Procedure (RCr) 7.20, in conjunction with RCr 7.22, the sworn

testimony of a witness at a bond reduction hearing, testimony subject to cross-

examination, is admissible at the trial of the defendant.[8]  665 S.W.2d at 321.

---

[7] While it may readily be conceded that hearsay rules and the
Confrontation Clause are generally designed to protect similar values, it
is quite a different thing to suggest that the overlap is complete and that
the Confrontation Clause is nothing more or less than a codification of
the rules of hearsay and their exceptions as they existed historically at
common law.  Our decisions have never established such a congruence;
indeed, we have more than once found a violation of confrontation values
even though the statements in issue were admitted under an arguably
recognized hearsay exception.  *See Barber v. Page*, 390 U.S. 719, 88 S.
Ct. 1318, 20 L. Ed. 2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.
Ct. 1065, 13 L. Ed. 2d 923 (1965).  The converse is equally true: merely
because evidence is admitted in violation of a long-established hearsay
rule does not lead to the automatic conclusion that confrontation rights
have been denied.

*California v. Green*, 399 U.S. 149, 155–56 (1970) (footnote omitted).

[8] As noted in *Howard*, RCr 7.20(1) states:

13

Relying on *Ohio v. Roberts*, 448 U.S. 56 (1980), for Sixth Amendment Confrontation Clause guidance, and *Wells v. Commonwealth*, 562 S.W.2d 622 (Ky. 1978), as authority for the introduction of testimony from a previous trial under RCr 7.22, the *Howard* Court stated:

> It is our opinion that if the prior testimony is found by the trial court to be reliable and trustworthy, and the witness was subjected to cross-examination, it makes no difference whether the prior testimony comes by way of deposition, previous trial, preliminary hearing, or as in this case, a bond reduction hearing, provided the same offense and charge are being dealt with.

665 S.W.2d at 323.

In *Parson*, the defendant challenged the admission of a physical therapist's deposition testimony at trial. *Parson*, quoting then recently-decided *Crawford*[9] and citing other United States Supreme Court precedent, described the defendant's Sixth Amendment right to confront his accusers at trial, 144 S.W.3d at 782-83, and affirmed the trial court. While the issue of the witness's unavailability under KRE 804 was argued, this Court concluded that the defendant had clearly waived his right to confront the witness at trial when he,

---

> At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: that the witness is dead; or that the witness is out of the Commonwealth of Kentucky, unless it appears that the absence of the witness was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering a deposition had been unable to procure the attendance of the witness by subpoena. . . .

665 S.W.2d at 323.

[9] "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 782 (quoting *Crawford*, 541 U.S. at 59).

through counsel, agreed that the testimony of medical witnesses could be presented by deposition.  *Id.* at 783.  We further concluded that the defendant could not renege on his waiver after the deposition was completed, and explained that even if error had occurred, it was harmless beyond a reasonable doubt for reasons including that

> the deposition was videotaped in the courtroom with the witness in the witness box [and] the jury was able to "weigh the demeanor of the witness" in a courtroom setting.  *Barber v. Page*, [390 U.S. 719], 725 [(1968)].  [Furthermore, the defendant was not] denied the right of cross-examination or the right to "meet the witness[ ] face to face."  Ky. Const. § 11.  A judge presided over the testimony just as would have occurred at trial.

144 S.W.3d at 785 (alteration to Ky. Const. § 11 in original).

Shields argues that while the circuit court relied upon *Howard* and *Parson*, their facts are distinguishable in regard to a "similar motive" analysis. As to *Howard*, Shields contends that the appellate court made no effort to determine whether the same motive for a full and rigorous cross-examination existed at a bond hearing as at trial, and furthermore, because that case dealt specifically with a bond hearing, the mention of the admissibility of preliminary hearing testimony was dicta.  As to *Parson*, Shields argues it is not applicable because the testimony of the medical witness was by deposition, and with the defendant and his counsel having notice that it was for the purpose of substituting for trial testimony, the defense had both the opportunity and the precise same motive to develop the testimony as they would have had at trial. Indeed, the trial court in this case relied upon *Howard* and *Parson* not for a similar motive analysis, an issue not presented in those cases, but apparently

15

for guidance regarding whether Mrs. Murrell's cross-examined, preliminary hearing testimony was sufficiently reliable to introduce to a jury. Both Kentucky cases looked to United States Supreme Court precedent on that particular issue.

*Pointer v. Texas*, 380 U.S. 400 (1965),[10] the seminal case in which the Supreme Court held the Sixth Amendment right to confrontation applied to the states via the Fourteenth Amendment, addressed the defense's objection to the prosecution's admission at trial of Phillips', the robbery victim's, testimony from the examining trial. Pointer, who did not have a lawyer at the examining trial, did not cross-examine Phillips. *Id*. at 401. The Court concluded:

> Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips, its introduction in a federal court in a criminal case against Pointer would have amounted to denial of the privilege of confrontation guaranteed by the Sixth Amendment.

*Id*. at 407.

*Barber v. Page*, 390 U.S. 719 (1968), decided three years after *Pointer*, yielded greater discussion of the confrontation right and the role of the preliminary hearing. Barber and his co-defendant Woods were charged with robbery. *Id.* at 720. At the preliminary hearing, Barber's counsel did not cross-examine Woods whose testimony incriminated Barber, although an attorney for another co-defendant did. *Id.* Oklahoma contended that Barber

---

[10] *Pointer* is not cited in *Howard* or *Parson*.

16

was afforded the right of cross-examination at the preliminary hearing, but he did not use it. *Id.* at 722. The Court rejected that argument because Barber was unaware that Woods would be in a federal prison at the time of his trial, but even if Woods's incarceration could be assumed, Barber was unaware that Oklahoma would make no effort to produce Woods at trial. *Id.* at 725.

> It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. E.g., *Mattox v. United States*, [156 U.S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895)] (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. *See* 5 Wigmore, Evidence § 1395-96, 1402 (3d ed. 1940); C. McCormick, Evidence § 231, 234 (1954).

*Id.* at 722.

The Court further explained that even if Barber's counsel had cross-examined Woods at the preliminary hearing that would not satisfy the Sixth Amendment, stating:

> The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. [Many years ago this Court stated that "(t)he primary object of the (Confrontation Clause of the Sixth Amendment) . . . was to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-243, 15 S. Ct. 337, 339, 39 L. Ed. 409 (1895).] A preliminary hearing is ordinarily a much

17

less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.

*Id.* at 721 (bracketed text), 725–26.

*Green* was decided two years after *Barber*. In contrast to *Pointer* and *Barber*, *Green* affirmed the admission of preliminary hearing testimony. After finding no constitutional violation when the preliminary hearing testimony was admitted despite the availability of the witness, the Court dealt with the California Supreme Court's conclusion that the opportunity to cross-examine Porter at the preliminary hearing did not satisfy the commands of the Confrontation Clause. *See* 399 U.S. at 153. In the face of Justice Brennan's dissent which articulates the concerns Shields now expresses as reasons Mrs. Murrell's preliminary hearing testimony is not admissible at trial, *see id.* at 195-203,[11] the Court advised that even if the witness were not available at trial,

---

[11] For example, Justice Brennan states:

[Considering that the prosecution at a typical preliminary hearing need show only probable cause,] [i]t follows that the purposes of the Confrontation Clause cannot be satisfied by a face-to-face encounter at the preliminary hearing. Cross-examination at the hearing pales beside that which takes place at trial. This is so for a number of reasons. First, as noted, the objective of the hearing is to establish the presence or absence of probable cause, not guilt or innocence proved beyond a reasonable doubt; thus, if evidence suffices to establish probable cause, defense counsel has little reason at the preliminary hearing to show that it does not conclusively establish guilt—or, at least, he had little reason before today's decision. Second, neither defense nor prosecution is eager before trial to disclose its case by extensive examination at the preliminary hearing; thorough questioning of a prosecution witness by

it believed the circumstances of the witness's preliminary hearing testimony would have satisfied the Confrontation Clause. *Id.* at 165.

The *Green* Court, having noted that if the circumstances under which the out-of-court statements were made were comparable to those at trial such that the primary object of the Confrontation Clause as explained in *Mattox* was met, found good reason to conclude the admittance of the out-of-court statements was constitutional. *Id.* at 157-58. The Court contrasted the purposes of trial cross-examination with the circumstances under which the out-of-court statements were made:

> Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe

---

defense counsel may easily amount to a grant of gratis discovery to the State. Third, the schedules of neither court nor counsel can easily accommodate lengthy preliminary hearings. Fourth, even were the judge and lawyers not concerned that the proceedings be brief, the defense and prosecution have generally had inadequate time before the hearing to prepare for extensive examination. Finally, though counsel were to engage in extensive questioning, a part of its force would never reach the trial factfinder, who would know the examination only second hand. . . .

. . . .

It appears, then, that in terms of the purposes of the Confrontation Clause, an equation of face-to-face encounter at the preliminary hearing with confrontation at trial must rest largely on the fact that the witness testified at the hearing under oath, subject to the penalty for perjury, and in a courtroom atmosphere. These factors are not insignificant, but by themselves they fall far short of satisfying the demands of constitutional confrontation. . . .

*Id.* at 196–99.

19

the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* at 158 (footnote omitted).

Analyzing the preliminary hearing, the *Green* Court, having described Porter as being subjected to extensive cross-examination by defense counsel, *id.* at 151, stated:

> For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable . . . .

*Id.* at 165.[12]

The Court considered both *Pointer*, 380 U.S. at 407, and *Barber,* 390 U.S. at 725-26, but found the *Green* preliminary hearing was not significantly different from an actual trial to warrant distinguishing it from those two cases for purposes of the Confrontation Clause. *Id.* at 165-66. The Court noted that in regard to cross-examination at a "less searching into the merits" preliminary hearing being able to satisfy the demand of the Confrontation Clause, Green's counsel did "not appear to have been significantly limited in any way in the

---

[12] When *Green* was decided in 1970 videotaped preliminary hearing proceedings were likely rare. Today, a jury is often able to see the witness on video, rendering the circumstances even more like observing the witness in the courtroom at trial. As the trial court in this case stated, "the jury can observe on the videotape the witness' demeanor, memory, age and ability to express herself."

scope or nature of his cross-examination of the witness Porter at the preliminary hearing." *Id.* at 166. The Court concluded that even if Porter were unavailable, "the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement." *Id.*

In *Roberts*, the Court did not deal with cross-examination of the prosecution's witness, but rather the defense's examination of its own witness at a preliminary hearing. The defendant was charged with forgery of a check and possession of stolen credit cards. The defense called a single witness, Anita, the alleged victims' daughter. Defense counsel attempted to elicit from Anita that she had given the defendant, a friend she had allowed to stay in her apartment, the checks and the credit cards without informing him that she did not have permission to use them. Anita denied the allegations. Defense counsel did not ask to have the witness declared hostile and did not request permission to cross-examine her. The prosecutor did not question the defense witness. 448 U.S. at 58.

At trial, the defendant testified that Anita had given him the checks and credit cards with the understanding that he could use them. *Id.* at 59. Anita did not appear at trial and following a hearing, the trial court allowed the prosecutor to admit the transcript of her preliminary hearing testimony. *Id.* at 59-60. The Ohio Supreme Court, in a 4-3 split decision, concluded that Anita was unavailable, but citing the dissenting opinion in *Green*, held that the transcript was inadmissible and that the mere opportunity to cross-examine at a preliminary hearing did not afford constitutional confrontation for purposes

21

of trial, reasoning that "normally there is little incentive to cross-examine a witness at a preliminary hearing, where the 'ultimate issue' is only probable cause." *Id.* at 60-61. Citing *United States v. Allen*, 409 F.2d 611, 613 (10th Cir. 1969), the three dissenting justices would have ruled that "the test is the opportunity for full and complete cross-examination, rather than the use which is made of that opportunity." *Id.* at 62.

Rather than addressing whether the mere opportunity to cross-examine at the probable cause hearing satisfies the Confrontation Clause or whether *de minimus* questioning is sufficient, the *Roberts* Court looked at the actual cross - examination performed by defense counsel. *Id.* at 70. The Court concluded that defense counsel tested Anita's testimony with "the equivalent of significant cross-examination." *Id.* The Court noted that defense "counsel's questioning comported with the principal *purpose* of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Id.* at 71 (citation omitted). The Court, citing *Green*, explained despite perhaps not being formally characterized as "cross-examination," the questioning of Anita afforded "substantial compliance with the purposes behind the confrontation requirement" and although Ohio law may have authorized objection by the prosecution, that did not happen, and defense counsel was not "significantly limited in any way in the scope or nature of his cross-examination." *Id.* (quoting *Green*, 399 U.S. at 166). The Court

22

rejected Roberts' argument that his case fell among those in which the Court must undertake a particularized search for "indicia of reliability," *id.* at 72, stating:

> In sum, we perceive no reason to resolve the reliability issue differently here than the Court did in *Green*. "Since there was an adequate opportunity to cross-examine [the witness], and counsel . . . availed himself of that opportunity, the transcript . . . bore sufficient 'indicia of reliability' and afforded [']the trier of fact a satisfactory basis for evaluating the truth of the prior statement.[']"

*Id.* at 73 (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972)) (internally quoting *Dutton v. Evans*, 400 U.S. 74, 89 (1970)) (first bracket in original).

Although not so evident in its analysis of the witness's preliminary hearing examination at issue, as to the adequate opportunity for examination *Roberts* articulated a test to determine whether an unavailable witness's former testimony may be admitted at trial—a test that was different from previous United States Supreme Court precedent. As early as *Mattox* and more recently in cases such as *Mancusi*, *Green*, and *Pointer*, the Supreme Court had followed the rule that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine. *Crawford*, 541 U.S. at 57. In 2004, *Crawford* overruled *Roberts*' test, 448 U.S. at 66, that an unavailable witness's statement is admissible "if it bears adequate 'indicia of reliability.'" As then explained by *Roberts*, reliability could be inferred when the evidence falls within a "firmly rooted hearsay exception" or shows "particularized guarantees of trustworthiness." Having reviewed the historical background of the Confrontation Clause, *Crawford* concluded: "Where

23

testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 U.S. at 68-69. Consequently, to the extent that *Howard* and *Parson* rely on indicia of reliability beyond confrontation, or the prior opportunity to cross-examine, *Crawford* essentially overrules those cases.

Although *Crawford* overruled *Roberts*, it noted that *Roberts*' outcome, which admitted testimony from a preliminary hearing at which the defendant had examined the witness, followed closely the traditional rule. *Id.* at 58. Hence, *Roberts*, analyzing the preliminary hearing testimony under the "adequate opportunity" standard, remains instructive to this Court along with the other United States Supreme Court preliminary hearing cases discussed above.

Upon review of these cases, we are reminded that the focus of the Confrontation Clause is ensuring a defendant does not suffer use of *ex parte* examinations as evidence against him. In these cases, *Mattox* is the polestar, directing that the defendant must have the opportunity for cross-examination. Furthermore, as held in *Pointer*, the defendant must have an adequate opportunity through counsel to cross-examine the witness. After *Barber* acknowledged that the less-searching probable cause hearing may satisfy the trial confrontation demands, *Green* held that the preliminary hearing cross-examination of a witness in that case, a cross-examination described as extensive, would have satisfied the Confrontation Clause.

Shields argues that he must have been afforded either an adequate opportunity or actually cross-examined Mrs. Murrell as allowed at trial in order for her preliminary hearing testimony to meet the Confrontation Clause demands. *Green* and *Roberts* suggest that if Shields were significantly limited in any way in the scope or nature of his cross-examination of Mrs. Murrell, her preliminary hearing testimony would likely be inadmissible at trial. Part of the problem with Shields's argument is that his questioning at the preliminary hearing was self-limited; the defense did not advance any cross-examination which the trial court disallowed. Without doing so, whether because he anticipated objections or because counsel felt ill prepared due to not having pre-hearing notice that Mrs. Murrell would testify, the argument that he was not afforded an adequate opportunity to cross-examine Mrs. Murrell is of little weight. Although Shields's defense counsel may have been caught off guard and she may not have had complete discovery,[13] her experience of never having seen an eyewitness appear to testify at a probable cause hearing would seem to raise a red flag and either lead to asking the trial court for relief or at least asking credibility-challenging questions "comporting with the principal *purpose* of cross-examination." *Roberts*, 448 U.S. at 71. However, defense counsel stated that it did not occur to her to ask for a continuance because Shields was present for the probable cause hearing. Regardless, the circumstances cannot be viewed as denying the defense the opportunity to confront the witness.

---

[13] The preliminary hearing was held eight days after the murder, which explains in part the paucity of discovery.

Additionally, as in *Mancusi* discussed *infra* the trial court properly evaluated the adequacy of Shields's opportunity to cross-examine by considering the questions defense counsel would have asked if she were cross-examining Mrs. Murrell with full knowledge that her testimony was being preserved for trial. This analysis allowed the trial court to consider what further cross-examination would have accomplished.

The United States Supreme Court 1972 decision in *Mancusi* predated *Roberts* by eight years. In *Mancusi,* the defendant, Stubbs, challenged the admission of the transcript of testimony given at his earlier trial. Stubbs's counsel had been appointed four days before that first trial. 408 U.S. at 209. Because the crime victim had moved out of the United States at the time of Stubbs's second trial and service for his appearance was not obtained, the trial court allowed admission of the victim's prior testimony, over defense objection. *Id.* Stubbs claimed that the lack of time for preparation "necessarily requires a finding that the cross-examination . . . was constitutionally inadequate." *Id.* at 214. The Court disagreed, reviewing the actual cross-examination at the first trial and the twelve questions which defense counsel offered that he would have asked had the witness been present at the second trial. *Id.* at 214-16. The *Mancusi* Court concluded that there was "an adequate opportunity to cross-examine [the witness] at the first trial and counsel for Stubbs availed himself of that opportunity, the transcript of [the witness's] testimony in the first trial bore sufficient 'indicia of reliability' and afforded 'the trier of fact a

26

satisfactory basis for evaluating the truth of the prior statement.'" *Id.* at 216 (quoting *Dutton*, 400 U.S. at 89). In regard to the questions which defense counsel would have asked at the second trial, the Court noted that "counsel at the retrial did not in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial." *Id.* at 215.

Here, Shields argues he would have questioned Mrs. Murrell about the medical examiner's report indicating that Samuel was strangled, information about which Mrs. Murrell had not testified.[14] Allegedly the defense would have pointed out to the jury that even though the medical examiner was providing evidence of strangulation as a possible cause of death, that is not what Mrs. Murrell testified to, and, indeed the defense did not believe that strangulation was the cause of death. Also, the defense would have asked about the falls in order for the jury to know that some of Samuel's injuries may have been from him falling. Mrs. Murrell would have been questioned about her competency and ability to remember, see and perceive the events. Finally, the defense would have inquired in more detail about the knives, where they were found, and whether Mrs. Murrell saw Shields place the knives where they were found. The trial court considered how Shields would have benefitted from these questions and the pertinent testimony that other witnesses may have to offer at

---

[14] In her testimony Mrs. Murrell described leaving the room to smoke in the garage. Shields was alone with the victim until he joined her in the garage, a period when Mrs. Murrell would obviously be unaware of Shields's actions.

trial as well. After careful examination, the trial court concluded that proper notice and timely discovery prior to Mrs. Murrell's testimony would not have helped Shields or his counsel in any significant degree.[15]

Upon review, we cannot conclude that the trial court abused its discretion, or that its decision to admit Mrs. Murrell's preliminary hearing testimony under KRE 804 was not supported by caselaw or fundamentally unfair. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). Furthermore, we decline Shields's request for palpable error review as to the

---

[15] *Roberts* suggests that this type of analysis should be the exception, rather than the rule. *Roberts* states in a footnote:

> We need not consider whether defense counsel's questioning at the preliminary hearing surmounts some inevitably nebulous threshold of "effectiveness." In *Mancusi,* to be sure, the Court explored to some extent the adequacy of counsel's cross-examination at the earlier proceeding. *See* 408 U.S. at 214–15, 92 S. Ct. at 2313–14. That discussion, however, must be read in light of the fact that the defendant's representation at the earlier proceeding, provided by counsel who had been appointed only four days prior thereto, already had been held to be ineffective. *See id.* at 209, 92 S. Ct. at 2311. Under those unusual circumstances, it was necessary to explore the character of the actual cross-examination to ensure that an adequate opportunity for full cross-examination had been afforded to the defendant. Cf. *Pointer v. Texas*, 380 U.S. at 407, 85 S. Ct. at 1069. We hold that in all but such extraordinary cases, no inquiry into "effectiveness" is required. A holding that every case involving prior testimony requires such an inquiry would frustrate the principal objective of generally validating the prior-testimony exception in the first place—increasing certainty and consistency in the application of the Confrontation Clause.
>
> The statement in *Mancusi* quoted in the text indicates the propriety of this approach. To the same effect is *Mattox v. United States*, 156 U.S. at 244, 15 S. Ct., at 340. ("The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination").

*Id.* at 73 n.12.

28

specific issue of "similar motive" as that term is used in KRE 804(b)(1). We simply cannot say that the trial court committed palpable error under RCr 10.26 by not *sua sponte* performing a "similar motive" analysis. Indeed, Shields's argument that a defendant does not have a similar motive in cross-examination at a preliminary hearing (where the focus is simply the establishment of probable cause) vis-à-vis the trial has been consistently rejected in other jurisdictions. *See* 4 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, *Criminal Procedure* § 14.1(d) (State law requirements.) (4th ed. Nov. 2021 Update) ("The appellate opinions uniformly reject the contention that the preliminary hearing's screening function inherently precludes the presence of a motivation that can be classified as "similar" to the motivation that exists at trial.").[16]

---

[16] The similar motive prerequisite was derived from the common law (and early statutory) requirement that the prior proceeding and the trial involved identical parties and centered on the same factual issues. That requirement ensured that, in both the trial and the prior proceeding, each party would have an incentive to challenge the witnesses favoring the other side on those common factual issues, but it did not also seek to ensure that this incentive included an outcome of comparable benefit for each proceeding should the party prevail in that challenge. Insisting that a favorable outcome in the past proceeding provide the same level of benefit as a favorable trial outcome would effectively limit that past proceeding to a previous trial involving the same issues, and the common law predecessor of the same motive formulation clearly also applied to other types of proceedings. Indeed, the preliminary hearing has a long history of being recognized as a paradigm of a prior proceeding presenting the same factual issues as the trial, as the prosecution in both proceedings has the burden of establishing (albeit under different standards of proof) both that the crime charged was committed and that the defendant committed that crime.

*Id.* (footnotes omitted).

In closing, the use of preliminary hearing testimony at trial will be atypical, even rare. Defense counsel in this case acknowledged that in her eight years of practice she had never seen any witness beyond law enforcement officers at a preliminary hearing and, in fact, the appearance of lay witnesses/victims in that setting is unusual. Moreover, death is the ultimate unavailability and deceased witnesses are essentially in a category of their own. Although not the only form of unavailability, the bar will be high and could include a witness being in a foreign country beyond summons, incapacitated by dementia or similar compelling circumstances. As for the dissent's concern about a law enforcement officer's preliminary hearing testimony being used when the officer is unavailable because of illness or mandatory training (even deployment with military reserves), those routine issues are addressed by rescheduling trials or even agreements to pre-record in-court testimony. Respectfully, our holding today will not change the character of preliminary hearings. Most importantly, we trust trial courts to proceed cautiously with this precedent, by carefully examining the reasons for the witness's unavailability; considering whether the defense was allowed the opportunity to cross-examine the witness at the preliminary hearing; ascertaining whether other witnesses to the crime preclude the need for the preliminary hearing testimony; and considering any other factors that may be relevant including for example the complexity of the case and the role of the unavailable witness.

## CONCLUSION

For the foregoing reasons, the Warren Circuit Court's order denying Shields's motion to exclude Mrs. Murrell's preliminary hearing testimony from evidence at trial is affirmed.

All sitting. Lambert and VanMeter, JJ., concur. Minton, C.J., concurs in result only. Keller, J., dissents by separate opinion, in which Conley and Nickell, JJ., join.

KELLER, J., DISSENTING: The question we must answer today is whether Gregory Shields had an adequate opportunity to cross-examine Mrs. Murrell at his preliminary hearing. The answer to that question is no.

Shields's defense counsel asked Mrs. Murrell only the following six questions during the cross-examination at the preliminary hearing:

1. Now, you said that Greg [Shields] had lived with you all for about four years?

2. How long have you known Greg?

3. The night that this happened, did this seem out of character for him?

4. Did he seem like he was acting usual?

5. Did it make sense that he was mad? Did you understand why he was mad?

6. And you told [the prosecutor on direct examination] that Greg took you all to doctors' appointments and ran errands for you, is that correct?

This cross-examination was not searching. It was not thorough. These questions barely touched on the facts of the underlying incident. Instead, they

31

primarily served to elicit background evidence. I cannot agree with the majority's holding that because defense counsel properly confined her questions to the scope of a preliminary hearing—probable cause—Shields's constitutional right to confront the witnesses against him was satisfied.

Holding as the majority does assigns defense counsel an impossible task. In order to conduct an effective cross-examination at the preliminary hearing, defense counsel will be forced to undertake significantly more investigation than currently occurs before that hearing. Under Kentucky Rule of Criminal Procedure (RCr) 3.10(2), the preliminary hearing must take place within ten days of a defendant's initial appearance if he is in custody and within twenty days if he is out of custody. Conducting sufficient investigation to cross-examine a witness as one would prepare for trial, especially without discovery provided by the Commonwealth, is practically impossible within that short time period. This cannot be what the framers of our Constitution intended.

This Court sits at a fork in the road: we must determine whether a preliminary hearing such as this offers an adequate opportunity to cross-examine as required by the Confrontation Clause of both the United States and the Kentucky constitutions. I assert that cross-examination at a preliminary hearing will *almost never* provide a defendant with an adequate opportunity to cross-examine a witness to satisfy the Confrontation Clause.

The significant right of an accused to confront the witnesses against him is not new. For over a century, the United States Supreme Court has opined

32

that the framers of the United States Constitution included the Confrontation Clause in the Bill of Rights primarily

> to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242–43 (1895). That Court has further acknowledged that a preliminary hearing is one of "the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Recognizing this kinship, we must view testimony elicited at a preliminary hearing with a critical eye towards preventing the abuses the framers of the Constitution sought to eliminate.

In *Crawford v. Washington*, the United States Supreme Court held that under the Confrontation Clause, a prior testimonial statement is only admissible at trial when (1) the statement was made by a witness who is unavailable to testify at trial, and (2) the defendant had an *adequate opportunity to cross-examine the witness* when he made the statement. 541 U.S. at 53–54, 57. In so doing, *Crawford* effectively overruled the requirement enunciated in *Ohio v. Roberts*, 448 U.S. 56 (1980), that the prior statements bear adequate "indicia of reliability." *Crawford*, 541 U.S. at 60–64, 67–69. The United States Supreme Court stated that the Confrontation Clause

33

"commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61.

It has long been recognized that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725 (1968). It is the "literal right to 'confront' the witness *at the time of trial* that forms the core of the values furthered by the Confrontation Clause." *California v. Green*, 399 U.S. 149, 157 (1970) (emphasis added). A "face-to-face encounter" with a witness is important "not so that the accused can view at trial his accuser's visage, but so that he can directly challenge the accuser's testimony *before the factfinder*." *Id.* at 192 (Brennan, J., dissenting) (citing 5 J. Wigmore, Evidence ss 1364, 1365 (3d ed. 1940)) (emphasis added). To that end, the Confrontation Clause protects "both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber*, 390 U.S. at 725; *see also Mattox*, 156 U.S. at 242–43.

Because in the case at bar we are called to determine the adequacy of the opportunity to cross-examine, it is essential that we focus on "[t]he principal *purpose* of cross-examination." *Ohio v. Roberts*, 448 U.S. 56, 71 (1980), *abrogated by Crawford*, 541 U.S. 36. The United States Supreme Court has described this purpose as "to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Id.* (quoting Davenport, *The Confrontation Clause and the Co-*

34

*Conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 HARV. L. REV. 1378 (1972)). Cross-examination is meant to ferret out the truth through challenging the witness's beliefs, recollections, and perceptions. Only if the defendant has an opportunity to do this can the prior cross-examination satisfy the Confrontation Clause.

In two significant cases, the United States Supreme Court has held that prior testimony at a preliminary hearing was properly admitted at a subsequent trial consistent with the Confrontation Clause. *Roberts*, 448 U.S. 56; *Green*, 399 U.S. 149. However, in both cases, the cross-examination of the witness at the preliminary hearing, as described by that Court, was extensive and searching. Instances where the cross-examination at the preliminary hearing is as thorough as in *Roberts* and *Green*, however, are the exception rather than the rule.

The United States Supreme Court described the cross-examination in *Roberts* in great detail. In that case, defense counsel questioned the witness at the preliminary hearing "at some length and attempted to elicit from her an admission that she had given [the defendant] checks and the credit cards without informing him that she did not have permission to use them. [The witness], however, denied this." *Roberts*, 448 U.S. at 58. The Court went on to explain in depth that despite technically being a direct examination of the witness,

> [c]ounsel's questioning clearly partook of cross-examination as a matter of *form*. His presentation was replete with leading questions, the principal tool and hallmark of cross-examination. In

35

addition, counsel's questioning comported with the principal *purpose* of cross-examination: to challenge "whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed." [The witness]'s unwillingness to shift the blame away from [the defendant] became discernible early in her testimony. Yet counsel continued to explore the underlying events in detail. He attempted, for example, to establish that [the witness] and [the defendant] were sharing an apartment, an assertion that was critical to [the defendant]'s defense at trial and that might have suggested ulterior personal reasons for unfairly casting blame on [the defendant]. At another point, he directly challenged [the witness]'s veracity by seeking to have her admit that she had given the credit cards to [the defendant] to obtain a television. When [the witness] denied this, defense counsel elicited the fact that the only television she owned was a "Twenty Dollar . . . old model."

*Id.* at 70–71 (footnotes and citations omitted). This description illustrates the comprehensive scope of the examination of the witness. The examination was so thorough that the Supreme Court described it as "the equivalent of significant cross-examination" and declined to determine if "*de minimis* questioning [at a preliminary hearing] is sufficient" to satisfy the Confrontation Clause. *Id.* at 70.

The cross-examination in the case at bar did not "explore the underlying events in detail" or "challenge [the witness]'s veracity" as did the cross-examination at issue in *Roberts. Id.* at 70–71. Neither did the cross-examination achieve, nor even attempt to achieve, "the principal *purpose* of cross-examination: to challenge whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended

36

meaning is adequately conveyed by the language he employed." *Id.* at 71

(internal quotation marks and citation omitted). Finally, the cross-examination

of Mrs. Murrell at Shields's preliminary hearing cannot accurately be described

as "the equivalent of significant cross-examination" as described in *Roberts. Id.*

at 70. In fact, the cross-examination at bar is more akin to "*de minimis*

questioning" that the *Roberts* Court declined to analyze under the

Confrontation Clause. *Id.*

Similarly, in *Green*, the United States Supreme Court noted that defense

counsel was not "significantly limited in any way in the scope or nature of his

cross-examination of the witness . . . at the preliminary hearing." 399 U.S. at

166. The Court held that the preliminary hearing cross-examination was not

"significantly different from an actual trial to warrant distinguishing the two . .

. for purposes of the Confrontation Clause," and that the preliminary hearing in

that case "provide[d] substantial compliance with the purposes behind the

confrontation requirement." *Id.* at 165–66.

The cross-examination in the case at bar was not similar to the one

described in *Green. Id.* at 165. Specifically, this cross-examination did not

provide "substantial compliance with the purposes behind the confrontation

requirement" as did the cross-examination in *Green.*[17] *Id.* at 166.

---

[17] Additionally, the facts in *Green* are further distinguishable because the witness therein *was subject to cross-examination* at trial. This fact further illuminates the totality of circumstance affecting the Court's analysis of adequacy of opportunity to cross-examine.

The purposes of a cross-examination as described in *Roberts* and *Green* are unlikely to be met within the structural limitations inherent to a preliminary hearing. Both the United States Supreme Court and this Court have acknowledged the difference in scope of a preliminary hearing compared to a full trial on the merits of a criminal case. The Supreme Court has described a preliminary hearing as "a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber*, 390 U.S. at 725.

Our Court, in turn, has explained that the "only purpose" of a preliminary hearing in Kentucky "is to determine whether there is sufficient evidence to justify detaining the defendant in jail or under bond until the grand jury has an opportunity to act on the charges." *King v. Venters*, 595 S.W.2d 714, 714 (Ky. 1980). Interestingly, this Court acknowledged that when a preliminary hearing "is confined, as it should be, to whether the prosecution has enough evidence to warrant a trial, the protection to the defendant is more shadow than substance." *Id.* at 715. This is because the "true purpose" of a preliminary hearing "is to prevent arbitrary prosecution, and *not to provide information to the defendant*." *Id.* (emphasis added). Given this, it is difficult to imagine that the cross-examination at a typical preliminary hearing will provide an adequate opportunity to cross-examine such that it satisfies a defendant's constitutional right to confront the witnesses against him.

In his dissent in *California v. Green*, Justice Brennan eloquently

described several differences between a preliminary hearing and a trial. These

differences illustrate why, in general, the cross-examination of a witness at a

preliminary hearing does not satisfy a defendant's right to confront that

witness at trial. He explained,

> First, as noted, the objective of the hearing is to establish the
> presence or absence of probable cause, not guilt or innocence
> proved beyond a reasonable doubt; thus, if evidence suffices to
> establish probable cause, defense counsel has little reason at the
> preliminary hearing to show that it does not conclusively establish
> guilt—or, at least, he had little reason before today's decision.
> Second, neither defense nor prosecution is eager before trial to
> disclose its case by extensive examination at the preliminary
> hearing; thorough questioning of a prosecution witness by defense
> counsel may easily amount to a grant of gratis discovery to the
> State. Third, the schedules of neither court nor counsel can easily
> accommodate lengthy preliminary hearings. Fourth, even were the
> judge and lawyers not concerned that the proceedings be brief, the
> defense and prosecution have generally had inadequate time before
> the hearing to prepare for extensive examination. Finally, though
> counsel were to engage in extensive questioning, a part of its force
> would never reach the trial factfinder, who would know the
> examination only second hand.

*Green*, 399 U.S. at 197 (Brennan, J., dissenting). Although *Green* was decided

in 1970, Justice Brennan writes as if he were observing trial practice in the

Commonwealth today.

Justice Brennan went on to explain that the way an attorney conducts

his cross-examination will likely differ markedly at a preliminary hearing as

opposed to a trial before a jury. He said,

> [C]ounsel must always temper his cross-examination to the
> individual jurors, using their reactions as a guide to the most
> effective line of questioning. The cross-examiner must remember
> that he is a performer and the jurors are his audience. No good
> performer ignores his audience, and all performances are

39

> conducted for the purpose of favorably impressing the audience.
> We conclude that experience demonstrates the essentiality of truly
> contemporaneous cross-examination.

*Id.* at 198 (quoting *People v. Green*, 451 P.2d 422, 427 (Cal. 1969)) (internal quotation marks and alterations omitted).

We acknowledge that at a preliminary hearing, as at trial, the witness testifies in a courtroom setting, under oath, and subject to the penalties for perjury. But these similarities on their own are insufficient to satisfy the demands of the Confrontation Clause. It would "ignore[] reality" to assume that these factors outweigh all competing considerations. *Green*, 399 U.S. at 199 (Brennan, J., dissenting). In addition to the differences between a preliminary hearing and a trial discussed above,

> the atmosphere and stakes are different in the two proceedings. In the hurried, somewhat pro forma context of the average preliminary hearing, a witness may be more careless in his testimony than in the more measured and searching atmosphere of a trial. Similarly, a man willing to perjure himself when the consequences are simply that the accused will stand trial may be less willing to do so when his lies may condemn the defendant to loss of liberty.

*Id.*

It is impossible to overemphasize the differences between a preliminary hearing and a trial. The scope of the two proceedings is different, as is the evidentiary burden. The two proceedings also operate under different procedural and substantive rules. For example, hearsay is permitted at a preliminary hearing. RCr 3.14(2). Importantly, at the same time, "[o]bjections to evidence on the ground that it was acquired by unlawful means [cannot be] made at the preliminary hearing." *Id.* at (3). Finally, counsel for the defendant

40

almost always conducts the preliminary hearing without the benefit of receiving discovery from the Commonwealth and with only a short time to investigate,[18] as was the case here. In fact, due to the requirements of our criminal rules, often, the Commonwealth's investigation is usually in its beginning stages at the time of the preliminary hearing. How a defendant can ever have an adequate opportunity to cross-examine a witness with such limited knowledge of the facts of the case is doubtful to this writer.

In this case, there are several alleged facts that likely would have become issues at trial but were not explored in defense counsel's cross-examination at the preliminary hearing. These, although not all-encompassing, include:

1. Mrs. Murrell went into the garage to smoke a cigarette stating, "I'm not gonna sit in here and look at this," while Shields was attacking her husband.

2. After cutting and slashing his uncle, Samuel Murrell, numerous times, Shields helped Mr. Murrell get out of bed and stand up with his walker while Mrs. Murrell changed the bloody sheets on the bed.

3. After the attack ended and Mr. Murrell was standing up beside his bed, Mr. Murrell fell twice, falling forward and hitting his head on a dresser the first time, and falling backwards onto the floor the second time.

4. Shields attempted to aid his uncle by putting bandages on his cuts.

---

[18] The preliminary hearing "shall be held within a reasonable time but no later than 10 days following the initial appearance if the defendant is in custody." RCr 3.10(2).

5. The medical examiner's report indicated strangulation as a cause of death, but Mrs. Murrell did not testify that Shields ever strangled Mr. Murrell.

Although exploration of these facts at trial likely would not have resulted in Shields being acquitted, they may have been supportive of a finding of guilt on a lesser offense than murder.

The cross-examination that occurred in this case is similar to most cross-examinations that take place at preliminary hearings. Under the majority's interpretation of the Confrontation Clause, the scope and tenor of preliminary hearings must change dramatically in order to provide the defendant an adequate opportunity to confront the witnesses against him under both the United States and Kentucky constitutions. The preliminary hearing will turn into a miniature trial, lasting much longer than preliminary hearings currently last, and will expend time and resources the judiciary does not have. It will become a more burdensome process for all parties involved.

Best practices, and even the provision of minimally effective representation, will require that defense counsel's cross-examination of witnesses be extensive and thorough. In fact, said cross-examination will likely go above and beyond mere relevance to probable cause. Cross-examination questions will likely draw objections from the Commonwealth when they inevitably exceed the scope of a preliminary hearing, as we have previously described. The trial court will then be placed in a quandary: sustain the Commonwealth's objection, limiting cross-examination to questions regarding

probable cause and likely set up a Confrontation Clause issue if that witness is later unavailable at trial, or overrule the Commonwealth's objection, allowing cross-examination to greatly exceed the scope of probable cause and protect the defendant's Confrontation Clause rights just in case the witness is unavailable for trial. In effect, the majority is placing the trial court in the position of choosing between adhering to the limited scope of the preliminary hearing on the one hand, and providing a forum for cross-examination sufficient enough to protect the constitutional rights of the defendant on the other. This presents an untenable dilemma for a trial court.

Defense counsel will also face difficult choices, especially because the majority's holding is based, at least in part, on the fact that Shields's defense counsel was not limited in her cross-examination by the trial court. Defense counsel can "follow the rules" of preliminary hearings and confine his questions to probable cause. Doing so, however, risks exactly what happened in this case: a trial court, or later an appellate court, could conclude that because defense counsel was not prohibited from asking any particular question, she had an adequate opportunity to cross-examine the witness, regardless of the scope of questions actually asked. On the other hand, defense counsel can "push the envelope" and ask questions that exceed the scope of probable cause knowing the questions may draw a justified objection and the ire of a trial court in front of which counsel often practices. Further, in asking a more extensive line of questioning than that only relevant to probable cause,

43

defense counsel may be forced to reveal its defense strategy and help build the Commonwealth's case in the process.

The majority bases its holding in part on the fact that Shields's attorney was not limited by the trial court in her cross-examination of Mrs. Murrell at the preliminary hearing. Although true that the trial court did not explicitly prohibit any questions, that may be merely because defense counsel confined her questions to probable cause. The majority seemingly finds fault with defense counsel for failing to ask questions that would exceed the bounds of probable cause and result in limits being placed by the trial court. I strenuously disagree with this proposition. We cannot allow a defendant's Confrontation Clause right to hinge on whether his attorney asks improper questions and whether the trial court prohibits those improper questions.

In order to conduct an effective cross-examination at the preliminary hearing, defense counsel will be forced to undertake significantly more investigation than currently occurs before that hearing. Under RCr 3.10(2), the preliminary hearing must take place within ten days of a defendant's initial appearance if he is in custody and within twenty days if he is out of custody. Conducting sufficient investigation to cross-examine a witness as one would prepare for trial, especially without discovery provided by the Commonwealth is practically impossible within that short time period. Defense counsel would have to choose between conducting the best cross-examination he could without adequate information or requesting a continuance of the preliminary hearing to a later date. A continuance of the preliminary hearing date comes

44

with its own disadvantages. First, if the defendant is in custody, he will likely remain in custody for the duration of that continuance. Second, during the interim, the Commonwealth could choose to present the case to the grand jury for an indictment without the preliminary hearing, and the defendant would lose any benefit he may receive from hearing the testimony at the preliminary hearing. The above circumstances present significant potential prejudice to defendants.

In Shields's case, the Commonwealth acknowledged that it called Mrs. Murrell to testify at the preliminary hearing, in part, to preserve her testimony, given her advanced age. This strategy was a reasonable and sound one for the Commonwealth to undertake at the time of the preliminary hearing. However, that hearing took place on February 10, 2017, and the only information provided to defense counsel from the Commonwealth at that time was the one-page police citation. The bulk of discovery in this case was provided to defense counsel on April 10, 2017, two months after the hearing. This discovery included prior statements of the witness and a medical examiner's report that listed a cause of death not testified to by the witness.

Sadly, Mrs. Murrell passed away on June 10, 2018. This was 16 months after the preliminary hearing and 14 months after discovery was provided to the defense! Given the advanced age of the witness and the trauma she had experienced, the Commonwealth could have, and should have, moved to conduct her deposition to preserve her testimony after the case had been fully investigated and discovery had been provided to defense counsel. It is fairly

rare that the Commonwealth has an eye-witness to almost the entirety of the commission of a serious crime who was uninvolved in said crime. It is even more unusual for that eye-witness to also be willing and physically able to testify to the crime at trial. The burden of proof in criminal cases is on the Commonwealth, as is the burden of preserving its witness's testimony.

This writer is deeply concerned with the implications of the majority's holding on future factual scenarios in which a witness is unavailable at trial. Although the majority suggests various self-imposed limitations to guide trial courts, those suggestions are not binding and are, at best, aspirational.

As the majority notes, the witnesses most often testifying at preliminary hearings are law enforcement. It is not unusual for a law enforcement officer to be unavailable on a specific trial date, be it for mandatory training, illness, or other professional or personal reasons. The majority notes that many of these issues can be resolved by scheduling changes, but such changes may not always be possible. Furthermore, those scheduling changes, even when possible, are not mandatory under the majority's analysis.  Trial court criminal dockets in the Commonwealth are often crowded and difficult to manage. Will the Commonwealth be able to credibly argue, and the Court perhaps agree, that the limited cross-examination of a law enforcement officer at the preliminary hearing is sufficient to use at trial? This writer is concerned that the aforementioned may become the practice before the trial courts in the Commonwealth and thus diminish a defendant's right to confront witnesses against him, regardless of the otherwise standard flexibility of trial courts. For

46

that reason, while I have the utmost confidence that our trial courts will act in good faith, good faith alone cannot satisfy the Confrontation Clause's guarantee.

We hope, as the majority asserts, that cases such as the one at bar will be rare. We hope that preliminary hearings will not change dramatically as a result. Nevertheless, however high the bar suggested by the majority's holding, it creates a significant risk to a Constitutional right that this writer is not willing to suffer.

For the reasons stated herein, I would hold that the witness's preliminary hearing testimony was not admissible at Shields's trial. While it appears in the record developed thus far that Shields engaged in heinous actions, I nonetheless must respectfully dissent.

Conley and Nickell, JJ., join.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Laurel Rachel Lewis
Assistant Attorney General